481 So.2d 312 (1985)
Elzie RUFFIN
v.
STATE of Mississippi.
No. 55765.
Supreme Court of Mississippi.
December 4, 1985.
Rehearing Denied January 15, 1986.
*313 Morris C. Phillips, Wright & Phillips, Carthage, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the court:
This is the third trial in the Newton County Circuit Court of the appellant Elzie Ruffin on a charge of murder of his wife. The first trial in March, 1981, resulted in a mistrial. The second trial in August, 1981 concluded with a conviction of the defendant and imposition of a life sentence which was reversed by this Court for the improper refusal of a manslaughter instruction. Ruffin v. State, 444 So.2d 839 (Miss. 1984). This third trial also resulted in a conviction of murder and life sentence.
Elzie Ruffin appeals the present conviction and assigns as error the following:
(1) The trial court committed error in overruling appellant's motion to transcribe the court reporter's notes and by overruling appellant's renewed motion to transcribe the court reporter's notes of the first trial of the appellant which resulted in a mistrial;
(2) The court committed error by not granting appellant's motion for a directed verdict of acquittal at the close of the state's case, by not granting the defendant's motion for a directed verdict at the close of all evidence, by not granting defendant's instruction for a directed verdict *314 and by not granting appellant's motion for a JNOV or in the alternative, a motion for a new trial;
(3) The trial court committed error by overruling defendant's motion that the trial judge recuse himself.

I.
Elzie Ruffin and the deceased, Bobbie Lee Ruffin, had been married approximately 24 years and had eight children whose permanent residence was with Elzie Ruffin. Ruffin had no prior criminal record and had worked nights as a private security guard for several years. Ruffin came home in the early morning hours of September 20, 1980, still in uniform wearing a holster and gun, and discovered the house empty. He went to the home of a male friend of his wife's and found his wife and son and took them home. An argument ensued.
Charles Jackson, a Newton County Deputy Sheriff, lived next door to Elzie Ruffin. On the morning of the incident, the young Ruffin boy came to the door of Charles Jackson, seeking his assistance to silence the argument between Elzie and Bobbie Lee. The deputy sheriff went out and found Elzie to be very mad, walking in circles around Bobbie Lee in an emotionally disturbed condition. Jackson, quoted Ruffin as saying "I'm tired of her f____ over me. I'm going to kill her."
Charles Jackson, unarmed, returned to his home to call for assistance. As Jackson entered his home, he heard a shot. He turned around and saw Bobbie Lee, some four to five feet from Ruffin, falling to the ground hitting her head on a concrete block. Jackson went to the scene where Ruffin voluntarily surrendered his gun and holster and said "I guess I'll go to the pen."
Ruffin testified that he and his wife were struggling over possession of the gun when it fired.
Bobbie Lee Ruffin died from a gunshot wound over her left eye. No challenge is made here to the cause of death, and therefore, that issue is not before the Court.

II.
Did the trial court err in overruling appellant's motion to transcribe the court reporter's notes of his first trial on March 27, 1981, which ended in a mistrial.
Appellant makes three assertions. He alleges that during the second trial, Charles Jackson admitted that he failed to repeat the exact wording used in the conversation between Elzie and himself shortly before the shooting because he didn't "want to use that [vulgar] word in front of them jurors." Jackson testified that when he went back to the office, "I was told to tell it just exactly like it happened." Appellant implies that this discrepancy in Jackson's testimony indicates potential prejudice to his client and warrants a production of the mistrial transcript. However, Jackson testified and was cross-examined fully as to his changed testimony in both prior trials.
Appellant further charges that Joe Mowdy, Chief of Police of the City of Newton, had testified in "the mistrial" but did not appear again until the trial presently under appeal. Appellant asserts that since he did not have the benefit of the transcript of the first trial, he was unable to determine if Mowdy was an impeachable witness  even though his testimony merely presented the chain of possession of the weapon which was not in dispute.
In a third argument, appellant contends that he was represented by another attorney in his first two trials and his present attorney had no personal knowledge of the foregoing proceedings  neither did he have the benefit of notes from the mistrial. This assertion overlooks the availability of the second appeal record as an alternative device for his attorney's information.
In response to the renewal motion for transcription of the court reporter's notes for the mistrial, the lower court judge stated:
I recall the testimony of the case, of the case that you refer to as being a mistrial, and the case which resulted in a *315 conviction of this defendant, and I certainly do not recall any difference in the testimony of the witness in those cases. To the best of my recollection, each and every witness testified in both cases. For an additional reason, I am in the middle of a term of court, and we have been almost constantly in court since the first of this year. There are numerous cases on appeal to the Supreme Court which this court reporter has got to go back and on the week ends and transcribe the records in those cases. That motion is overruled.
Appellant cites Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), as authority for the proposition that "the state must provide an indigent defendant with a transcript of trial proceeding when that transcript is needed for an effective defense or appeal." He then contends he was denied (1) due process of law guaranteed by § 14 of the Mississippi Constitution of 1890 and the Fifth Amendment of the Constitution of the United States; and (2) right to counsel guaranteed by § 26 of the Mississippi Constitution of 1890 and the Sixth Amendment of Constitution of United States because his court appointed counsel had no access to the transcript of the mistrial.
Appellee concedes that a state must, as a matter of equal protection, provide indigent prisoners with basic tools of adequate defense or appeal, when those tools are available for a price to other prisoners. Britt v. North Carolina, supra. See also: Jackson v. Estelle, 672 F.2d 505 (5th Cir.1982). Britt held further that when an indigent defendant's claims a right to a free transcript, two factors relevant to determination of need are: The value of the transcript to defendant in connection with appeal or trial for which it is sought, and the availability of alternative devices that would fulfill the same function as a transcript. 404 U.S. at 227, 92 S.Ct. at 433. Justice Douglas, concurring in Britt, stating that even in the absence of its specific allegations, it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: As a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses. Id. at 228, 92 S.Ct. at 434.
Appellee cites State v. Jones, 545 S.W.2d 659 (Mo. 1979) for authority that appellant's constitutional claim lacks merit as follows:
There is no equal protection issue here. Appellant was not denied the transcript because he was indigent. See State v. Ambus, 522 S.W.2d 306, 310 (Mo. App. 1975). He was furnished portions of the transcript for which he had expressed a particular interest, but was not furnished those portions which could not be prepared within the time available. Those portions would not have been "available for a price" to a non-indigent. The concept of equal protection, although greatly expanded in recent years, does not require the granting to an indigent accused rights or privileges not available to the non-indigent.
Id. at 664.
Appellant's allegations of prejudice caused by the denial of the mistrial transcript are meritless. All discrepancies as to the testimony of Charles Jackson were fully explained at the second and third trial. No prejudice resulted as to the testimony of Joe Mowdy, since there was no dispute as to the chain of possession of the evidence.
As a final note, appellant made no request in advance of trial for a continuance so that the reporter might have time to prepare a transcript as requested.
In the case sub judice it is apparent that appellant's reason to obtain the transcript bears no indication that the trial transcript would have been useful, or necessary to defendant's case, or that alternative devices were unavailable.

III.
Did the court commit error by not granting appellant's motion for a directed verdict at the close of the state's case and at the close of all evidence and by not granting *316 appellant's motion for a JNOV or motion for a new trial.
Appellants contend that the state failed to prove that Elzie Ruffin did willfully, unlawfully and feloniously with malice aforethought kill his wife. He argues that the homicide occurred "during an affry (sic) when the deceased assaulted appellant and attempted to seize appellant's revolver." Asserting that there was insufficient evidence to support a verdict of conviction of murder by malice aforethought and that a peremptory instruction or directed verdict should have been issued, appellant cites Cochran v. State, 278 So.2d 451 (1973), which states:
The rule in regard to peremptory instruction is the same in criminal and civil cases, the rule being that when all the evidence on behalf of the state is taken as true, together with all sound or reasonable inferences, it may be drawn therefrom, if there is enough evidence to support a verdict of conviction, the peremptory instruction must be denied.
Id. at 453.
However, appellant waived the lower court's consideration of the denial of his motion for directed verdict when he presented the evidence in his own behalf. Henderson v. State, 453 So.2d 708 (Miss. 1984).
Appellant further contends that as he was the only eyewitness to the actual homicide, the Weathersby rule, as follows, should apply:
Where the defendant or the defendant's witnesses are the only eyewitness to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933).
However, Charles Jackson and another neighbor were "witnesses" to the incident. Based upon the analysis of Taylor v. State, 239 Miss. 365, 123 So.2d 236 (1960) the assertion fails:
If there were no other witnesses, it is probable that the Weathersby rule, hereinabove stated, would entitle appellant to a reversal. But there were two other witnesses in a nearby field who contradicted the version of appellant and his wife. These witnesses did not see what happened because, they said, their view was obstructed by a house. One of them testified that she heard appellant call Eley, the deceased, "a black son-of-a-bitch" and then heard appellant say "speak to me, I ain't done nothing to you, I will shoot your dam brains out," and about that time heard a shot. This witness then testified she went over to where the deceased was lying mortally wounded. Another witness working in the field testified to substantially the same facts. Of course, those witnesses substantially contradicted appellant's version in material particulars and authorized the jury to disbelieve all or any part of the testimony of appellant and his witnesses.
Id. at 237, 238. The contradiction of these three witnesses with the defendant's testimony preclude application of the Weathersby rule.
The issue was properly submitted to the jury in accord with the guideline of Winters v. State, 449 So.2d 766 at 771 (Miss. 1984), which states:
Under our system, the jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses. E.g., Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); Pearson v. State, 428 So.2d 1361, 1363 (Miss. 1983). Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that under the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.

*317 Similarly, we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. See Rule .16(1) and (2), Uniform Criminal Rules of Circuit Court Practice; Pearson v. State, supra, 428 So.2d at 1364.
See also Burge v. State, 472 So.2d 392, 397 (Miss. 1985) (trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence); see also May v. State, 460 So.2d 778 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984). The verdict is reasonable in light of the evidence and the denial of the judgment notwithstanding the verdict and motion for a new trial were proper in this case.

IV.
Did the court err in overruling appellant's motion that the judge should recuse himself since he had formally been partners with Keith Henry  the attorney that represented defendant in a previous trial.
The lower court answered in overruling the motion:
The motion filed by the defendant, Elzie Ruffin, is for the court to recuse itself for the reason that at the time this defendant was tried for the crime of murder and found guilty, he was represented by the Honorable Keith Henry, and that subsequently his case was appealed to the Supreme Court and reversed back for a new trial. Mr. Ruffin states in his motion that the Court should disqualify itself, because he could not be impartial, for the fact Mr. Henry formerly was law partner of the judge. The truth is that Keith Henry and I started practicing law together as partners, I as the senior partner and he as the junior partner in the year 1966, and we practiced together as partners until the year 1975. At that time, that partnership was dissolved, and Mr. Leon Mangum and I formed a partnership, and continued to practice in the same building, Mr. Mangum having purchased Mr. Henry's interest in the building and all contents. But Keith Henry practiced individually and as a solo practitioner in Union in the years of 1975, 1976, until disbarred by the Supreme Court last year, and that the years that he practiced was also in the town of Union, the same place that Leon Mangum and I practiced together as partners. But this judge became judge March 7, 1977 and since the termination of our partnership, Mr. Keith Henry and I have had no association, professional, business, social, or otherwise, other than two lawyers, he being a practicing lawyer and me being a trial judge... . The motion is overruled. I have no interest in the outcome of this case, and I have no interest or association with Elzie Ruffin's former attorney. It is a frivolous motion (R. 10).
The legal authority determining this proposition is contained in constitutional and statutory directives:
Mississippi Constitution of 1890, Article 4, section 165:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity... .
Miss. Code Ann. § 9-1-11 (1972). Judge not to sit when interested or related.
The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties.
When a judge is not disqualified under § 165 of the Mississippi Constitution, or § 9-1-11, the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion. McLendon v. State, 187 Miss. 247, 191 So. 821, 823 (1939).
*318 Appellant's entire argument rests on the fact that his former attorney, against whom he had filed a bar complaint, had at one time been a law partner of the judge. Such a connection is inadequate to indicate partiality on the part of the lower court judge. The third assigned error lacks merit.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.