493 So.2d 1280 (1986)
Stanley Doyle WEEKS
v.
STATE of Mississippi.
No. 55745.
Supreme Court of Mississippi.
September 3, 1986.
Rehearing Denied October 1, 1986.
*1281 Robert G. Johnston, Alexander, Johnston & Alexander, Cleveland, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Stanley Doyle Weeks was indicted for the murder of Robert Ed Maxwell. Weeks was tried in the Circuit Court of Sunflower County, Mississippi, convicted of manslaughter and sentenced to fifteen (15) years, with five (5) years suspended.
He assigns nine errors on this appeal, all of which lack merit, and we therefore affirm his conviction and sentence.

I.
At the end of 1983 on New Year's night Stanley Doyle Weeks was on patrol in the Town of Boyle, Bolivar County, Mississippi. Weeks, the son of Boyle's Police Chief, did weekend patrol at night for free. On this particular night he was accompanied by one M.L. Trotter, an employee of Weeks' father but not a police officer.
At about 2:30 a.m. Robert Ed Maxwell ran a stop sign in the Town of Boyle and Weeks set out in pursuit. A high speed chase ensued that took the parties out of Bolivar County into Sunflower County. Ultimately Maxwell drove his automobile into a field where the car stopped. Weeks with his gun in his right hand approached the vehicle and told Maxwell he was under arrest. According to Weeks, Maxwell then exited the car screaming and he jumped on Weeks. Weeks fell over backward with Maxwell on top of him. When they hit the ground the gun fired and Maxwell was killed by a single gunshot into his head. *1282 Weeks crawled out from under the body of Maxwell and left it face down on the ground. Weeks testified that he did not intend to kill Maxwell and claimed that the shooting was accidental.
Dr. Rodrigo Galvez performed the autopsy on the body of Maxwell. Galvez found the gunshot wound to be the cause of death and he testified that the trajectory of the bullet was from the top back left side of the head down toward the front and right side of the head. The bullet entered Maxwell's head approximately three inches above and approximately one inch behind his left ear.
Maxwell's body was found face down 20 to 25 feet away from his automobile.
In the opinion of Dr. Galvez the gun was touching Maxwell's head when it was fired. Galvez further was of the opinion that Maxwell was lying prone on the ground with the left side of his face up and the right side of his face touching the ground when the bullet was fired. This opinion was based upon the trajectory of the bullet, the recoil wound to the right eye, and the marks on the right side of Maxwell's face and neck.
On cross-examination Galvez said that if the shooting happened as claimed by the defense witnesses that that could account for certain injuries to Maxwell's hands but that it was impossible to account for the recoil wound to Maxwell's right eye under the defense theory. Galvez thought this was true because had the two bodies been in the position described by Weeks it would have been impossible for the shot to have been fired in the manner that it was because of the nature of the human wrist.
A firearms expert testified that the pistol used by Weeks was functionally reliable, including the safety feature, and that the trigger must be held fully to the rear of the trigger guard during the entire arch of the hammer before it would fire.

II.

WAS IT ERROR NOT TO GRANT WEEKS A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE AND AGAIN AT THE END OF THE ENTIRE CASE?
When Weeks presented evidence in his own behalf he waived his own objection to the denial of the motion for a directed verdict at the end of the State's case. Ruffin v. State, 481 So.2d 312, 316 (Miss. 1985).
This is then in essence an appeal from the denial of judgment of acquittal. The standard for determining whether a directed verdict or a peremptory instruction of not guilty should be granted at the conclusion of the entire case is as follows:
Where a defendant has requested a peremptory instruction in a criminal case or after conviction moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence  not just the evidence which supports the State's case. ... The evidence which supports the case of the State must be taken as true... . The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. ... If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions  the request or motion should be denied. (Emphasis added.)
Gavin v. State, 473 So.2d 952, 956 (Miss. 1985) (citations omitted).
When we apply the above test and accept the testimony of Dr. Galvez as true, and consider all of the favorable inferences which could be reasonably drawn from that testimony then reasonable fair minded men could reach different conclusions; therefore, *1283 the issue was one for the jury and there is no merit to this assignment.

III.

WAS WEEKS ENTITLED TO A DIRECTED VERDICT AT THE CLOSE OF THE CASE ON THE BASIS OF THE WEATHERSBY RULE?
The Weathersby rule is as follows:
Where the defendant or the defendant's witnesses are the only eyewitness to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by facts of common knowledge. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).
Ruffin v. State, 481 So.2d 312, 316.
Because the testimony of Dr. Galvez substantially contradicts the testimony of both Weeks and Trotter, the Weathersby rule does not apply to the facts of this case and this assignment of error is without merit.

IV.

WAS IT ERROR NOT TO GRANT WEEKS A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE OR CONTRARY TO THE SUBSTANTIAL WEIGHT OF THE EVIDENCE?
The test to be applied to see if a new trial should have been granted is as follows:
While the request for a peremptory instruction or the subsequent motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial judge's sound discretion... . The motion invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which authorizes the trial judge to grant a new trial if required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Under our established case law, however, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence... .
Gavin v. State, 473 So.2d at 956 (citations omitted).
Once again the issue presented was the contradiction between the testimony of Weeks and Trotter and that of Dr. Galvez.
On this record we are unable to say that the trial judge abused his sound discretion when he denied the new trial because he was not convinced that the verdict was contrary to the substantial weight of the evidence. Therefore, there is no merit to this assignment of error.

V.

WAS IT ERROR TO EXCLUDE EVIDENCE OF MAXWELL'S FIVE CIVIL COMMITMENT PROCEEDINGS; TO EXCLUDE THE ASHTRAY TAKEN FROM THE MAXWELL CAR AND TO EXCLUDE THE FOUR MARIJUANA CIGARETTE BUTTS FOUND IN THE ASHTRAY, THE ANALYSIS BY THE EXPERT WITNESS TO THE EFFECT THAT THE CIGARETTES CONTAINED MARIJUANA, AND THE PHOTOGRAPHS AND SLIDES THEREOF; AND DID THE COURT ERR IN EXCLUDING MAXWELL'S TWO SPEEDING, TWO DUI AND ONE IMPROPER LANE USAGE MISDEMEANOR CONVICTIONS?
Under this heading we will discuss these three interrelated assignments of error.
On February 13, 1984, the prosecution filed a motion in limine requesting the court to prohibit Weeks from introducing evidence or making any argument from which inferences could be drawn relative to the character of Maxwell, the deceased. The prosecution alleged that the general rule regarding inadmissibility of character evidence concerning a homicide victim was applicable and the exception thereto was *1284 not applicable since the defense offered by Weeks was accident or misfortune and not self-defense and therefore there was no issue as to who was the aggressor.
Prior to the beginning of the trial the trial judge ruled that the findings by the persons performing the autopsy on Maxwell as to the drugs present in his body following the homicide was relevant and admissible, however, he excluded the other proposed testimony.
The trial court did not abuse its discretion in not allowing the introduction of the excluded evidence for the simple reason that Weeks was not claiming self-defense and for the further reason that at the time of the shooting he did not know who the driver of the car was. Furthermore, the issue of murder was not submitted to the jury only the issue of manslaughter. Self-defense was not before the jury. Weed v. State, 406 So.2d 24 (Miss. 1981); Fournet v. State, 392 So.2d 1154, 1156 (Miss. 1981); McDonald v. State, 218 So.2d 21, 22 (Miss. 1969).
Clearly a trial judge has considerable discretion as to relevancy and admissibility of evidence and unless this judicial discretion is so abused as to be prejudicial to the accused we will not reverse on these grounds. Shearer v. State, 423 So.2d 824, 826 (Miss. 1983).
If we look at the items separately, the commitment papers and the traffic citations were too remote in time even if there was an issue concerning who was the aggressor presented to the jury in this case. Stewart v. State, 226 So.2d 911, 912 (Miss. 1969).
Further the commitment papers contained material which was not admissible under the facts of this case; namely, references to "antecedent specific acts of violence alleged to have been committed by deceased." Shinall v. State, 199 So.2d 251, 258 (Miss. 1967).
As to the ashtray with the marijuana cigarette butts, there was abundant, and largely uncontradicted evidence concerning Maxwell's consumption of alcohol, marijuana and PCP. Therefore, even if this evidence was relevant, it was little more than cumulative. See Weed, supra. This assignment of error is without merit for the trial judge did not abuse his judicial discretion regarding these profferred pieces of evidence.

VI.

WAS IT ERROR TO REFUSE INTO EVIDENCE A COPY OF A COMPLAINT REPORT MADE BY THE BOLIVAR COUNTY SHERIFF'S OFFICE DISPATCHER, JOE EARL GILBERT?
Gilbert was the dispatcher and monitored the calls from the patrol car of Weeks on the night of the killing of Maxwell. During his testimony his "Complaint Report" was offered into evidence and the State's objection was sustained. Gilbert was allowed, however, to refresh his memory with the complaint report and he ultimately testified from it. Gilbert further testified that he made the complaint report as a part of his official duties and it was an official record of the Bolivar County Sheriff's Department and it was made during the time that the radio traffic was going on and that the copy was a true and correct one. The ground for the objection by the prosecutor was the failure of the defense to lay the proper predicate.
The complaint report record could have been properly introduced into evidence as a business record exception to hearsay. Johnson v. State, 476 So.2d 1195 (Miss. 1985).
However, the officer testified from the radio log and the radio log was introduced. He also testified from the complaint report. Weeks himself later testified to essentially the same thing that was contained in the radio log and the complaint report. The material contained in the complaint report was therefore cumulative to the material in the radio log and to the testimony of Weeks. There was no prejudice in refusing the introduction of the report and therefore, no abuse of discretion by the trial judge. If this be error, it is harmless *1285 error beyond a reasonable doubt under Rule 11 of the Mississippi Supreme Court Rules.

VII.

WAS IT ERROR TO LIMIT THE REDIRECT EXAMINATION OF THE WITNESS JIMMY JOEL AS TO STATEMENTS MADE BY WEEKS AT THE SCENE OF THE CRIME?
Jimmy Joel, the Bolivar County investigator for the sheriff's office who had investigated the shooting testified for the defendant. On cross-examination Joel was asked whether or not Weeks made certain statements that night after the shooting. The statements specifically inquired about included: that Weeks said he had shot a kid, which Joel testified that he had; that Weeks said that the victim fell across his leg, which the witness Joel denied that Weeks said. Joel was also asked about what Weeks said about how he was holding the gun when he approached the car that contained Maxwell.
On redirect, defense counsel requested Joel to tell the court everything that Weeks told him at the scene that night. The state's objection, it being improper redirect, was sustained. A record was made. Defense counsel was requesting an opportunity for Joel to testify as to everything that Weeks said about the occurrence. The trial judge held that defense counsel could only go into the specific statements and questions asked on cross-examination and could not go into everything that Weeks might have said out there at the scene that night. When making the record of the testimony offered, Joel gave a narrative of what Weeks told him that night. Joel also testified that Weeks said it was an accident. The trial court ruled that the defense could only inquire on redirect concerning how Maxwell and Weeks had fallen.
In Cole v. Tullos, 228 Miss. 815, 90 So.2d 32 (1956), this Court said the following:
The redirect examination of witnesses rests largely in the discretion of the trial court. After a witness has been cross-examined, the party calling him as its witness has a right to re-examine him to explain the cross-examination, the witness' expressions and his motives for using them. It is proper on redirect examination to put questions having some bearing on the case and which follow out questions put on cross-examination. But it is generally ruled that on re-examination of a witness, he may not be questioned in reference to matters not inquired into on his cross-examination. 58 Am.Jur., Witnesses, Sec. 562; Tucker v. Tucker, 1896, 74 Miss. 93, 19 So. 955, 32 L.R.A. 623.
90 So.2d at 35.
It is hard to picture this limitation by the trial judge as an abuse of his judicial discretion. Defense counsel could have further inquired in the specific statements testified to by Joel on cross-examination even though there was very little room in them for explanation. Moreover, Weeks himself testified later in the trial and was allowed to go into the details of what happened both before and after the shooting including that it was an accident. We do not think this assignment has merit. Any error that may be inferred from this ruling would have been harmless under Rule 11 beyond doubt.

VIII.

WAS IT ERROR TO DENY WEEKS A CHANGE OF VENUE?
Weeks filed a supplemental assignment of error alleging that he should have been granted a change of venue and relying upon our recent decisions in Fisher and Johnson, (cited hereafter) Weeks filed his motion on February 10, 1984. In Johnson v. State, 476 So.2d 1195 (Miss. 1985), Johnson was convicted of capital murder and sentenced to death in Lauderdale County despite his request for change of venue.
We restated the rule that the decision to grant a motion for change of venue rests largely within the sound discretion of the trial judge; however, it was pointed out that such discretion may be abused.
*1286 We quoted from Eddins v. State, 110 Miss. 780, 783, 70 So. 898, 899 (1916), as follows: "the person on trial for his life is but asking for his rights when he requests a change of venue." Johnson, 476 So.2d at 1210, (emphasis added). We further said: "Eddins would require a change based on the showing that the empaneling of an impartial jury is merely doubtful. Seals [208 Miss. 236, 44 So.2d 61 (1950)] indicates that such doubt is automatically implicit when public opinion is saturated with bias, hatred and prejudice against the defendant."
We adopted the following rule: "[T]he accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained; upon proper application [motion supported by the affidavits of two witnesses with knowledge], there arises a presumption that such sentiment exists; and, the state then bears the burden of rebutting that presumption." Id. at 1210-1211.
We further noted that normally such a presumption can be rebutted during voir dire. However, there may be some circumstances when the pretrial publicity is so damaging, the presumption so great, that no voir dire can rebut it. Id. [citing Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed. 663 (1963)].
In Johnson, fifteen witnesses were produced. They included representatives of the media who testified as to the extensive media coverage. Some testified that because of the media coverage, the extradition problems, the nature of the crime, and the character of the victims, that Johnson could not receive a fair trial. The prosecution's witnesses were hardly impressive and all were either related to, or knew, in some way the victim, or were involved in the investigation, or both. One of the state witnesses based his testimony on his belief that basically everybody in Lauderdale County was honest, and therefore he felt that Johnson could receive a fair trial.
We held that Johnson had made a prima facie case of community prejudice and we further said that the presumption was then raised to an irrebuttable level, pursuant to Rideau, by the testimony of the fifteen defense witnesses who stated the specific reasons Johnson could not receive a fair trial. Id. at 1213.
We then reviewed the question of what circumstances, when present, would indicate that a defendant has a right to a change of venue as a matter of law. From a review of prior cases the court noted certain elements:
1. The preponderance of the cases were capital cases; heightened standard of review is employed on appeal where the defendant's life is at stake.
2. Crowds threatening violence toward the accused.
3. Extensive media exposure.
4. Serious crimes against members of prominent, influential families; serious crimes such as mass or serial murders.
5. Crimes committed by a black upon a white victim.
6. Inexperienced defense counsel.
When these circumstances, and similar ones, exist, particularly in combination, the Court said it is better to change venue. We quoted from Hill v. State, 72 Miss. 527, 534, 17 So. 375, 377 (1895), wherein it was said that in criminal prosecutions "the fair way is the safe way, and the safe way is the best way." But the discretion rule in change of venue cases was left intact.
In Fisher v. State, 481 So.2d 203 (Miss. 1985), we reiterated that the decision for change of venue is subject to the sound discretion of the trial court but we added that it was not to be made in his "unfettered discretion". Id. at 215.
In Winters v. State, 473 So.2d 452, 457 (Miss. 1985), we said "In reviewing the assigned error that a trial judge has abused his discretion in denying a change of venue, we look to the completed trial, particularly including the voir dire examination of the prospective jurors, to determine whether the accused received a fair trial." We pointed out in Fisher that absent unusual circumstances the trial judge should rule *1287 on the motion at the conclusion of the venue hearing and in any event prior to summoning prospective jurors. We said in essence that the trial judge should not wait to see if voir dire cures doubts created at a venue hearing. It is not reversible error to do otherwise, however.
Most recently, in Cabello v. State, 490 So.2d 852 (Miss. 1986), which was a capital case resulting in a life sentence, we said the following:
Recent decisions of this Court have reminded the public that "when it is doubtful that a fair and impartial jury can be obtained in the county where the homicide has been committed, an accused on trial for his life `is but asking for his rights when he requests a change of venue'." Fisher v. State, 481 So.2d 203, 220 (Miss. 1985). Johnson v. State, 476 So.2d 1195 (Miss. 1985).
"[A] motion for change of venue ordinarily should be granted where, under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused's right to a fair trial may be lost." Fisher v. State, 481 So.2d 220. This Court has often held that the decision regarding a change of venue in a criminal proceeding is committed to the sound discretion of the trial court. Winters v. State, 473 So.2d 452 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). However, Fisher demonstrated that the venue question is in the sound discretion, not the unfettered discretion, of the trial judge.
The question now to be answered is whether the trial judge abused his sound discretion in refusing to grant the defendant's change of venue motion.
Id. at 854.
In Cabello we held that there was no abuse of discretion. This decision was based on the voir dire where none of the prospective jurors indicated that they had formed an opinion as to the facts of the case, even though some admitted that they had heard about the case. The defendant there presented no evidence whatsoever to show that an impartial jury could not be found in Alcorn county.
We have reviewed the newspaper articles and the video tapes of the newscasts introduced as evidence at the hearing in this case. The type of saturation media coverage which existed in Fisher does not exist here. With the exception of one article, the January 5, 1984, issue of the Enterprise-Tocsin the articles and newscasts were typical and objective media coverage. Most seemed favorable to Weeks' version of what happened. Nor do any of the other elements, where there is a right to a change of venue as a matter of law as set out in Johnson, exist.
Furthermore, this record does not contain the voir dire of the prospective jurors. Therefore it must be assumed that the 12 jurors who were seated stated that they could give Weeks a fair trial. See Winters, 473 So.2d at 457; but see Fisher at 220.
Applying the Eddins-Johnson/Fisher analysis, we find that the trial judge did not abuse his discretion in overruling the motion for change of venue and there is no merit to this assignment of error.
We therefore find that the conviction of manslaughter and sentence of fifteen (15) years in the custody of the Department of Corrections with five (5) years suspended of Stanley Doyle Weeks should be and is affirmed.
CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS WITH FIVE (5) YEARS SUSPENDED AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.