503 So.2d 803 (1987)
Frank Joseph WETZ
v.
STATE of Mississippi.
No. 56233.
Supreme Court of Mississippi.
February 25, 1987.
*804 Earl B. Stegall, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, For the Court:

I.
Man's inhumanity to man is occasionally understandable even when illegal or unjustifiable, but his inhumanity to a child is beyond our capacity to fathom.
*805 Today's appeal is presented by one convicted of the battered murder of his seven month old daughter. Because the defendant was the only eyewitness to the child's death and because he argues strenuously a theory of accident, we have reviewed the record dispassionately and with great care, notwithstanding our visceral reaction to the death of this baby girl. Finding no error in the proceedings below, we affirm.

II.
Frank Joseph Wetz, Defendant below and Appellant here, was a seabee in the United States Navy, stationed in Gulfport, Mississippi. Wetz lived in an apartment with his girlfriend, Jodi Owens, and their seven month old daughter, Kristina Lynn Owens. On July 17, 1983, Kristina died under suspicious circumstances. On October 12, 1983, the Grand Jury for the First Judicial District of Harrison County returned an indictment charging Wetz with Kristina's murder. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1986).
Wetz defended, urging that Kristina died as a result of an accidental drowning.[1] He testified that on the day in question, while Jodi was at work, he was babysitting Kristina. Wetz stated that he ran some water into the tub, placed Kristina on a sponge in the tub, then went into the kitchen to get a soda and a cleaning pad. When he returned, Wetz said he found Kristina turned on her side lodged between the sponge and the edge of the tub. Wetz testified that he immediately pulled Kristina from the tub and took her into the bedroom, placing her on the bed. He then tried to administer mouth-to-mouth resuscitation to no avail. Frightened, Wetz ran to his landlord's home and told his landlord to call an ambulance. Shortly thereafter an ambulance arrived and paramedics attempted life-saving maneuvers. They placed Kristina in an ambulance and took her to the emergency room at Memorial Hospital in Gulfport, where Dr. James Sheffield treated her. There Kristina died.
During the prosecution's case-in-chief Wetz' landlord, Steven Baudier, testified that Wetz came to his home on July 17, 1983, requesting assistance in summoning an ambulance because his child had fallen in the tub. After calling the ambulance, Baudier went to Wetz' apartment, where he found Wetz administering mouth-to-mouth resuscitation to Kristina. Baudier attempted to assist Wetz by administering C.P.R. to Kristina. He testified that he saw the damp sponge in the tub, but saw no standing water and the plug was taken out.
Pat Sullivan, a paramedic, testified that he received a call about a drowning on July 17, 1983, and he and his partner responded. When they arrived, Baudier and Wetz were performing C.P.R. on Kristina. Sullivan and his partner removed Kristina from the bed and placed her on the floor, administering advance life support to her. Although Sullivan had been informed that Kristina had drowned, he thought that there had been a head injury involved because of the bruises he observed on Kristina's head. He further testified that he went into the bathroom and saw the sponge in the tub but did not see any water.
The other paramedics who treated Kristina were Gary Hargrove and Joey Holcomb. Hargrove testified that he saw no evidence that Kristina had drowned as he was treating her because there was no foam emanating from her mouth or nose, a finding that may be made with approximately 97 percent of all drowning victims. However, Hargrove testified that he could not deny that Kristina had drowned, but he saw no signs of drowning. Holcomb testified basically to the same events as did Hargrove and Sullivan.
Police Officer Michael Ellis testified that he was called to Wetz' home to conduct an investigation after Kristina was taken to the hospital. He testified that he observed blood stains on the bed in the bedroom. In the bathroom, he saw a sponge in the tub and droplets of water on the floor, but none standing in the tub.
*806 Diane Lesley was the first officer at the scene on July 17. She testified that as she started toward the door, Wetz had his hands clasped together and yelled "Oh God, if you'd only give me another chance." She went into the bathroom and noticed there was water on the floor making it entirely damp. There was also a damp sponge in the tub, but no standing water therein.
Charles Rogers was an officer who participated in an investigation of the Wetz apartment. He testified that he found a baby blanket with small blood stains in the front room of the apartment. He also checked concrete slabs outside the home for blood stains, but found none.
Steve Slote, another Gulfport police officer, participated in a search of the residence the day following Kristina's death. He testified that he found a white towel which appeared to be stained quite extensively with blood in a closet located next to the bathroom. On cross-examination, Slote acknowledged that there had been no laboratory test identifying the substance on the towel as blood.
Slote also testified that Wetz had given him a statement on July 17, 1983, regarding the occurrence that day. Slote testified that Wetz said he had returned home from Camp Shelby on July 16, 1983. Because Jodi had gotten a job, Wetz was to babysit Kristina that day. After taking Jodi to work, and returning home, as he was attempting to unlock the door to his apartment, Kristina fell out of a infant seat in which he was carrying her and struck her head on the pavement. Wetz said that he then took Kristina inside, administered first aid to her and tried to feed her. When she would not eat, Wetz said that he lost his temper and struck the baby three or four times. At the end of the day, when he went to pick up Jodi, he told her of the incident with Kristina and apologized. He further told Slote that the following day, July 17, 1983, he once again baby sat for Jodi while she was at work. He said that he placed the baby in the bathtub on a sponge in order to soak her and relieve her bruises. He said that he left for a few minutes to get something to drink and when he returned, Kristina was floating in the water.
Rick Gatson was a deputy with the Harrison County Sheriff's Department who took some photographs at the Wetz apartment after Kristina was taken to the emergency room, and who was assigned to be with Wetz on July 17 after this happened. Gatson testified that while they were waiting at the emergency room, Wetz told him that he had slapped Kristina several times pretty hard on that day. Gatson also testified that Wetz at one point bent over in his chair, put his face into his hands and said, "I'm glad it's all over with. I can't handle it any more."
Patrick Dempsey, a past friend of Wetz' who served in the seabees with Wetz, testified that Wetz had shown him a picture of Jodi, calling her the world's ugliest woman, and a picture of Kristina, saying he did not care about her at all. Dempsey testified that while Wetz was showing him these pictures, Wetz stated: "I'd do anything I can to get these two out of my life. If I had to waste them, I would." On cross-examination, defense counsel attempted to impeach Dempsey's testimony by establishing that Dempsey was trying to make things hard on Wetz because he disliked him.
Another past naval friend of Wetz, Michael Pethel, testified that Wetz had told him on numerous occasions that he did not care for Kristina. Once Wetz showed him the dresser drawer in which he placed Kristina. Pethel also testified that Wetz made a remark about wondering what he could get for Kristina on the black market. On cross-examination, Pethel testified that Wetz joked around a lot and had an unusual sense of humor. Pethel's wife, Terry, testified that she had heard Wetz say that as far as he was concerned, Kristina was not his daughter and he did not love her.
Christine Kingsland baby-sat Kristina for Jodi and Wetz. When Jodi and Wetz first began bringing Kristina to her, Kristina appeared to be a healthy, normal baby. Kingsland testified that after Jodi got a *807 job, Wetz started staying with the baby more often, and the baby became more to herself and bruises started appearing on her body. Kingsland's husband, Mark, testified that he and his wife took Kristina to a nurse in their apartment complex because they believed Kristina was being neglected.
Dr. James A. Sheffield testified, upon the predicate of his examination and treatment of Kristina in the emergency room she died as a result of battered child syndrome. Dr. Monroe S. Samuels, forensic pathologist, gave his opinion that the cause of Kristina's death was trauma to the brain, resulting from multiple injuries to the head. Ann Johnson, the charge nurse who assisted in treating Kristina at the emergency room that day, testified she saw no evidence that Kristina had drowned.[2]
Photographs were introduced depicting Kristina as she appeared while she was being treated in the emergency room. These photographs illustrated multiple bruises on Kristina's head. Wetz attempted to explain the bruises by reference to the incidents said to have occurred the day before, as described above.
Jodi Owens was the last witness for the prosecution. She testified that Wetz told her that Kristina had fallen out of her carseat and cut her forehead as he was taking her into their apartment. She also testified that Wetz told her he had slapped Kristina after she fell out of the carseat because she would not be quiet. Jodi also testified about two instances of unusual behavior by Wetz before the tragic event of July 17, 1983. She testified that Frank would put Kristina in a dresser drawer, thinking it was funny. She also testified that he put tape over her mouth one time. She testified that on the morning of July 17, 1983, she fed Kristina and changed her diapers and at this time Kristina was fully conscious and alert. Jodi also reviewed the photographs of Kristina admitted into evidence and pointed out the differences in her appearance in the pictures since last time Jodi had seen her. Jodi testified that there were many additional bruises on Kristina in the pictures than when she last saw her. On cross-examination, Jodi testified that Kristina fell off the couch and bed several times, but she never saw Wetz strike Kristina.
At the close of the prosecution's case-in-chief, Wetz moved for a directed verdict on the grounds that the State failed to prove the requisite malice for the crime charged. The Circuit Court overruled this motion and Wetz then testified on his own behalf as the only witness in his case-in-chief. His testimony has already been set out, supra. Following Wetz' testimony, the prosecution called several rebuttal witnesses and Wetz was called for surrebuttal. Thereafter the jury returned a guilty verdict and Wetz was sentenced to serve a term of life imprisonment in Parchman. Following a denial of his motion for a new trial, Wetz brings this appeal.

III.
Wetz' initial assignment of error challenges the legal sufficiency of the evidence and urges that we reverse and order his discharge from custody. The point was initially presented to the Circuit Court via Wetz' motion for directed verdict at the end of the case for the prosecution. It was renewed at the end of all of the evidence on his request for a peremptory instruction. The substance of the point was finally presented to the Circuit Court via a portion of Wetz' motion for a new trial[3] which was overruled and denied on April 25, 1984.
*808 Our concern here is whether the evidence in the record is sufficient to sustain a finding adverse to Wetz on each element of the offense of murder. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1986). In the present context we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the guilt must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Glass v. State, 278 So.2d 384, 386 (Miss. 1973). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
The heart of Wetz' attack on the jury's verdict is his claim that the prosecution failed to prove malice or intent. He predicates this argument on the familiar Weathersby rule, to-wit:
Where the defendant or the defendant's witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933); see also Weeks v. State, 493 So.2d 1280, 1282 (Miss. 1986); Harveston v. State, 493 So.2d 365, 370-71 (Miss. 1986); Ruffin v. State, 481 So.2d 312, 316 (Miss. 1985); Johnson v. State, 475 So.2d 1136, 1148 (Miss. 1985).
Reflection, of course, makes clear that the Weathersby rule is really "nothing more than a restatement of the general rule." Harveston v. State, 493 So.2d at 371. If the defendant and his witnesses are the only eyewitnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt. Under such circumstances we have always mandated that peremptory instructions be granted whether under the label of Weathersby or otherwise. Harveston v. State, 493 So.2d at 371.
*809 It is true that the only witness to the death of Kristina was Frank Joseph Wetz. Where the physical facts and circumstances in evidence materially contradict the defendant's version of what happened, the Circuit Court is not required to direct a verdict under Weathersby. Rather, the matter then becomes a question for the jury. Harveston v. State, 493 So.2d at 371; Johnson v. State, 475 So.2d 1136, 1148 (Miss. 1985); May v. State, 460 So.2d 778, 782 (Miss. 1984); Johnson v. State, 346 So.2d 927, 929 (Miss. 1977).
As discussed in the Section II, supra, testimony of the doctors established that Kristina died from trauma to the brain which was a result of multiple injuries to her head. The paramedics' testimony also indicated that the result of death was not drowning. The photographs introduced into evidence illustrated Kristina's badly bruised head. The expert testimony coupled with the physical facts substantially contradicts Wetz' version of what happened. The instant case is very similar to Johnson, supra, where this Court held that a defendant on trial for murder of her infant son was not entitled to a Weathersby instruction because the testimony of the doctors and the physical facts of the condition of the child's body substantially contradicted the defendant's version of what happened. Johnson, 475 So.2d at 1148. Therefore, the Circuit Court committed no error when it overruled Wetz' renewed motion for directed verdict at the end of the trial based on the Weathersby rule. See Cardwell v. State, 461 So.2d 754, 760-61 (Miss. 1984); Baker v. State, 455 So.2d 770, 773-74 (Miss. 1984); Daumer v. State, 381 So.2d 1014, 1018 (Miss. 1980).
Frank Joseph Wetz' Assignment of Error No. 1 is denied.

IV.
Wetz next argues that the Circuit Court erred when it failed or chose not to grant an instruction on the lesser included offense of manslaughter. Our review of the record, however, fails to disclose that any such manslaughter instruction was requested. There is in the record no specific ruling of the Circuit Court to which Wetz may point and urge as error. See Lancaster v. State, 472 So.2d 363, 366 (Miss. 1985); Roberts v. State, 458 So.2d 719, 721 (Miss. 1984); Bell v. State, 411 So.2d 763, 765 (Miss. 1982); Newell v. State, 308 So.2d 71, 78 (Miss. 1975).
More fundamentally, Wetz encounters our familiar rule that the record must contain an evidentiary predicate for a jury instruction such as that at issue here. Only where the record contains sufficient evidence that a rational jury might have found for Wetz on the manslaughter issue may it be said that the lesser included offense instruction should be granted. See, e.g., Phillips v. State, 493 So.2d 350, 353-54 (Miss. 1986); Harper v. State, 478 So.2d 1017, 1022 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801-02 (Miss. 1984).
Here there was no such evidence. Wetz' defense was that Kristina died as a result of an accidental drowning. The prosecution's view of the case was that Wetz was guilty of murder. There being no evidentiary predicate in the record, Wetz' Assignment of Error No. 2 is denied.

V.
Wetz argues that the testimony of his girlfriend, Jodi Owens, was sufficiently prejudicial to deprive him of his right to a fair trial notwithstanding the Circuit Court's having sustained an objection thereto. He refers to the following colloquy during the prosecution's direct examination of Jodi.
Q. Did anything unusual happen to you, and if so, when, after you moved to Gulfport with Kristina?
A. Me and Joe [Wetz] would get in arguments about nothing really, you know, that meant anything, and he would grab me around the neck and squeeze hard. The first time, you know, it wasn't that bad, and I thought it was just kind of like a joke, you know, and he was just kidding around. But, you know, I started crying, and he wouldn't let go, and he  and then he did it three times to me at different occasions, different arguments, *810 and each time he would, he would squeeze harder and it would last longer and he would make me promise to quit crying because I was crying out and asking him to get off of me. And he would put his hand over my mouth and he would push really hard and I would have bruises on my lips from where he had pressed so hard and my lips would be bad. And then he also kicked me one time.
MR. LADNER (defense counsel):
Your Honor, we object to her going into this. The defendant is not accused of doing anything to her.
THE COURT:
Sustained.
Wetz contends that this testimony includes evidence of other crimes and, although the objection was sustained, it was not sufficient to remove prejudice from the minds of the jurors. Wetz' counsel made no request that the court admonish the jury regarding this testimony, nor did he request a mistrial. At the end of the trial, the Circuit Court instructed the jury in writing to disregard all testimony which had been excluded from consideration via evidentiary rulings during the course of the trial.
Where an objection is sustained and the jury is admonished to disregard the question, this Court will not find reversible error, absent unusual circumstances. May v. State, 460 So.2d 778, 783 (Miss. 1984); Herron v. State, 287 So.2d 759, 766 (Miss. 1974); see also Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Whitlock v. State, 419 So.2d 200, 202 (Miss. 1982); Carrol v. State, 391 So.2d 1000, 1002 (Miss. 1980). In the case at bar, the Circuit Court did not specifically admonish the jury to disregard this particular question contemporaneously with sustaining the objection of the defense counsel. Clanton v. State, 279 So.2d 599 (Miss. 1973) provides guidance in such circumstances. In that case, the prosecution asked several of its witnesses questions which the defendant alleged were prejudicial. The court sustained objections to all of these questions, and this Court held on appeal:
The court sustained appellant's objection because the question of the district attorney about spending some time in jail for the charge of assault was improper. Appellant did not request the court to instruct the jury to disregard the question and the court did all that the appellant requested.
279 So.2d at 602; see also Sanders v. State, 479 So.2d 1097, 1103 (Miss. 1985).
In the case at bar the Circuit Court did all that it was asked to do. The assignment of error is denied.

VI.
During the prosecuting attorney's cross-examination of Wetz, the following colloquy occurred:
Q. Do you have any prior criminal convictions?
A. I believe when I was in  the first time I got a summons to court for marijuana or something.
Q. Marijuana or something?
A. Marijuana, period.
Q. What was the  what else?
A. That's it.
Q. Ever been convicted of D.U.I.?
A. Yes, I have.
Q. Forget that one. What 
A. Well, you know, if you want traffic tickets and all, I  you know, I've got traffic tickets before.
Q. Driving an automobile while drunk on the highway is just a traffic ticket; is that what you are saying?
A. No. I would say it's a very serious offense.
Q. Okay, very serious. Anything else that you left out awhile ago about your prior criminal convictions?
MR. LADNER (defense counsel):
Your Honor, we are going to object to any further questioning on this, on the grounds that, one, the question by the State is improper. He hasn't laid a proper predicate or foundation for his question.
THE COURT:
I'm going to sustain the objection to this extent. All you can ask him is *811 whether he has or has not been convicted of the crime, and if so, what was the crime.
MR. BURDICK (prosecution):
I think I've covered that.
Q. Do you have anything else to add?
A. No, I don't think so.
Wetz contends that this was an attempt by the State to show him as a bad man. He argues that this testimony was evidence of crimes other than that for which he was on trial, and that his testimony had no relevant purpose other than to attack his character. Wetz further contends that the court failed to admonish the jury, and even if it had done so, this testimony was so prejudicial that it constitutes reversible error.
Prior to January 1, 1986  and this case was tried prior to that date  convictions, whether felony or misdemeanor, were admissible to impeach a witness' credibility. Manning v. State, 188 Miss. 393, 195 So. 319, 320 (1940); Miss. Code Ann. §§ 13-1-11 and -13 (1972)[4]; see also Sanders v. State, 352 So.2d 822 (Miss. 1977) (defendant entitled to cross-examine prosecution witness on both misdemeanor and felony convictions); Hartfield v. State, 186 Miss. 75, 189 So. 530 (1939).
Without doubt the prosecution was entitled to inquire about Wetz' prior conviction involving the use or possession of marijuana. The DUI conviction arguably poses a different problem because of Miss. Code Ann. § 63-9-15 (1972), which reads as follows:
The conviction of a person upon a charge of violating any provision of Chapters 3, 5 or 7 of this title, or other traffic regulations less than a felony shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding.
In other words, pre-rules Mississippi law[5] distinguished between misdemeanors and misdemeanor traffic offenses in determining admissibility of convictions for impeachment purposes. See Comments, Miss.R.Evid. 609; Ellis & Williams § 4-6, supra. The question thus becomes whether a D.U.I. conviction was under that law categorized as a misdemeanor or a misdemeanor traffic offense. Alluding to this distinction in a different context, in Hogan v. State, 235 So.2d 704, 705 (Miss. 1970) this Court held that while driving under the influence was classified as a misdemeanor, it differed in "essential particulars" from the usual traffic violation. And in Jones v. State, 461 So.2d 686, 695 (Miss. 1984) we held D.U.I. a misdemeanor allowing a warrantless arrest of the misdemeanor where the arresting officer witnessed the offense. Consistent with Hogan and Jones, we regard D.U.I. as a misdemeanor of sufficient gravity that conviction thereof could be used for impeachment purposes under our former law.
The assignment of error is denied.

VII.
Wetz argues that the admission of photographs of Kristina when she was being *812 treated in the emergency room at Memorial Hospital was reversible error. Wetz acknowledges that the admission of photographs in evidence is left up to the sound discretion of the trial judge and will not be disturbed unless the judge abused his discretion. Hubbard v. State, 437 So.2d 430 (Miss. 1983). However, Wetz contends that the pictures of Kristina had no probative value because they depicted her after merthiolate had been applied to her body. Wetz argues that the pictures give the general appearance of a more severe treatment of the child by discoloring a much larger area than that of the location of the bruises. Therefore, Wetz argues that the sole effect of introducing these pictures was to inflame and prejudice the jury against him.
No doubt these photographs, which we have viewed, offered the jury no incentive to acquit. They nevertheless had probative value for four reasons. First, they were properly admitted to show the condition of Kristina immediately after the incident. Price v. State, 54 So.2d 667 (Miss. 1951). Second, they portray pictorially the extent of the head and facial trauma observed by the witnesses and described by Dr. Sheffield, the attending physician. Third, the pictures had the potential of clarification, or making more certain, that which occurred. King v. State, 408 So.2d 1375, 1376 (Miss. 1982). Finally, the photographs depicted the multiple bruises on Kristina's head which were evidence of malice, an essential ingredient of the crime charged, and were thus needed to refute Wetz' Weathersby defense. Therefore, the Circuit Court did not abuse its discretion in admitting these pictures into evidence. Martin v. State, 354 So.2d 1114, 1118 (Miss. 1978) (no abuse of discretion by admitting photographs in child abuse case where pictures of deceased child showed bruises, contusions and injuries on the body); Tapp v. State, 347 So.2d 974, 977 (Miss. 1977) (no abuse of discretion by admitting photographs in child abuse case where pictures reflected bruises and marks on child's body); Cardwell v. State, 461 So.2d 754, 760 (Miss. 1984) (same).
The assignment of error is denied.

VIII.
Finally, Wetz argues that the verdict of the jury was against the overwhelming weight of the evidence. Here again he says that there was no credible evidence which would tend to prove malice or intent to kill and that the jury's verdict was for that reason against the weight of the evidence.
The question of whether the verdict was against the overwhelming weight of the evidence is, in essence, an allegation that the trial judge was in error in overruling the defendant's motion for a new trial. See Gray v. State, 487 So.2d 1304, 1311 (Miss. 1986). A motion for a new trial is addressed to the sound discretion of the trial judge who may grant a new trial if he deems such is required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Rule 5.16, Miss.Unif.Crim.R.Cir.Ct.Prac.; Van Buren v. State, 498 So.2d 1224, 1228 (Miss. 1986); Weeks, 493 So.2d at 1283; Gray, 487 So.2d at 1311; Malone v. State, 486 So.2d 360, 366 (Miss. 1986). The trial judge should not order a new trial unless he is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Temple v. State, 498 So.2d 379, 382 (Miss. 1986); Weeks, 493 So.2d at 1283; Malone, 486 So.2d at 396; Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983); Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
In reviewing this claim, this Court must accept as true the evidence favorable to the State. Van Buren, 498 So.2d at 1228; Malone, 486 So.2d at 366. This Court will reverse only when it is convinced that the trial judge has abused his discretion. Malone, 486 So.2d at 366; Quinn v. State, 479 So.2d 706, 710 (Miss. 1985). Further, where there is conflicting testimony, the jury is the judge of the credibility of the witnesses. Van Buren, 498 So.2d at 1228-1229; McCullum v. State, 487 So.2d 1335, 1339 (Miss. 1986); Williams v. State, 463 So.2d *813 1064, 1069 (Miss. 1985); Groseclose, 440 So.2d at 300; Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); Barrett v. State, 329 So.2d 67, 70 (Miss. 1976).
Having in mind the facts presented to the jury as summarized in Section II above, we cannot say that the trial judge abused his discretion in denying Wetz' motion for a new trial. See Cardwell v. State, 461 So.2d 754, 760-61 (Miss. 1984); Baker v. State, 455 So.2d 770, 773-74 (Miss. 1984); and Daumer v. State, 381 So.2d 1014, 1018 (Miss. 1980). The assignment of error is denied.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
GRIFFIN, J., not participating.
NOTES
[1] The facts are set forth in considerable detail as Wetz claims that the evidence was wholly insufficient to sustain a judgment of conviction. See Section III below.
[2] Another nurse, Kathy Page, testified that she saw no evidence of drowning, but defense counsel objected to this testimony and the objection was sustained.
[3] In his brief before the court, the Attorney General argues that we should not consider the propriety of the Circuit Court's denial of the motion for a directed verdict made at the end of the prosecution's evidence, on the premise that Wetz waived any rights he might have in that regard by offering evidence in his own behalf. We have, of course, stated this waiver rule on numerous occasions, generally without bothering to explain its limited procedural meaning. See, e.g., Weeks v. State, 493 So.2d 1280, 1282 (Miss. 1986); Ruffin v. State, 481 So.2d 312, 316 (Miss. 1986); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984); Henderson v. State, 453 So.2d 708, 709 (Miss. 1984); Rainer v. State, 438 So.2d 290, 292 (Miss. 1983); Robinson v. State, 418 So.2d 749, 750 (Miss. 1982). Because the point is often misunderstood an explanation may be helpful.

By offering evidence of his own, the defendant in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict. What the waiver rule means is that the defendant must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state of the record which may have existed back when the motion for a directed verdict was originally made.
Put otherwise, all of these motions  the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or, finally, a motion for judgment of acquittal notwithstanding the verdict  are procedural vehicles for challenging the sufficiency of the case for the prosecution. Each requires that the court consider all of the evidence before it at the time the motion is considered. When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. Here, of course, that was when the Circuit Court overruled the motion for a new trial which contained at least two paragraphs challenging the legal sufficiency of the evidence. Cf. Clements v. Young, 481 So.2d 263, 268 (Miss. 1985). See also Griffin v. State, 495 So.2d 1352, 1353 (Miss. 1986).
[4] Miss. Code Ann. § 13-1-11 (1972) reads as follows:

A conviction of a person for any offense, except perjury or subornation of perjury, shall not disqualify such person as a witness, but such conviction may be given in evidence to impeach is credibility. A person convicted of perjury or subornation of perjury shall not afterwards be a competent witness in any case, although pardoned or punished for the same.
Miss. Code Ann. § 13-1-13 (1972) reads as follows:
Any witness may be examined touching his interest in the cause or his conviction of any crime and his answers may be contradicted, and his interest or his conviction of a crime established by other evidence. A witness shall not be excused from answering any material and relevant question, unless the answer would expose him to criminal prosecution or penalty.
[5] Under the new Mississippi Rules of Evidence, effective January 1, 1986, two categories of crimes are admissible for purposes of impeachment:

(1) felonies, provided the court determines that the probative value of admitting evidence of the crime outweighs its prejudicial effect.
or
(2) crimes involving dishonesty or a false statement, whether felonies or misdemeanors.
Thus, under the new rules, testimony elicited by the prosecution regarding the D.U.I. conviction would be inadmissible.