This appeal presents the question of whether the trial judge abused his discretion in excluding a witness' testimony concerning a state's exhibit, where defense counsel had allowed the witness to enter the courtroom and view the exhibit during a recess in the trial. Because we find that the trial judge did
abuse his discretion in excluding testimony of the witness, we reverse and remand for a new trial.
 FACTS
On the evening of March 2, 1985, John R. Walker, a financial consultant with a law degree and a Ph.D. degree in clinical psychology, was driving south on Highway 15 from Louin, Mississippi, en route to Laurel. Dr. Walker was accompanied by his wife Mary and their teenaged son. At approximately 6:00-6:15 p.m. (around dusk) Walker approached the intersection of Highway 15 and Tally Road. When about one-fourth mile north of the intersection, Walker noticed a small Pinto automobile traveling east on Tally Road and approaching the intersection of Highway 15. Walker blinked his headlights so as to alert the driver of the Pinto to his presence, and the Pinto proceeded slowly into Highway 15 and headed north. For a long distance south of the Tally Road intersection, Highway 15, a two-lane highway, is a straight stretch of road. Immediately south of the Tally Road intersection, however, Highway 15 rises into a steep hill which crests at a distance of approximately 259 feet from the intersection. A driver headed north on Highway 15 cannot see the intersection until he reaches the crest of the hill. Immediately after the Pinto pulled out into Highway 15, a 1976 Oldsmobile came over the hill from the south. Walker estimated the Oldsmobile's speed at about 60 m.p.h. The driver of the Oldsmobile, apparently realizing that the Pinto was going very slowly, put his lights on bright, turned on his left signal blinker, and moved into the southbound lane to go around the Pinto. The driver of the Pinto then pulled over into the southbound lane in front of the Oldsmobile. The driver of the Oldsmobile then tried to get back into the northbound lane, but the driver of the Pinto also started moving back into the northbound lane. At this point, the Oldsmobile collided with the Pinto. Both the Pinto and the Oldsmobile left the highway. The driver of the Pinto, 22-year-old Dorothy A. (Lisa) Tally, was thrown from her car and died instantly. In the meantime, Walker had pulled off the road in an attempt to give the Oldsmobile room to go around the Pinto.
After the collision, Walker got out of his car and approached the car closest to him, the Oldsmobile, which was driven by the defendant, 34-year-old Carl Moffett. According to Walker, Moffett got out of the car holding his arms. When Walker asked Moffett if he was all right, Moffett replied that his arms were hurting. Then Walker checked the Pinto and discovered that its driver was not in the car. After looking for the driver, with no success, Walker went to Tally's store in Louin to make sure that a passerby had called for help as requested. Walker's wife and son stayed at the scene of the accident. According to Moffett, during this time he searched for the driver of the Pinto, and, finding her body, he took her pulse. Then he went to the top of the hill and started flagging traffic.
Durwood Dyess, a resident of Louin, was traveling south on Highway 15 that evening and came upon the scene of the accident, apparently while Dr. Walker was gone. He told Moffett that he would go up to "Mr. [Russell] Tally's" and get him to call an ambulance and fire truck. He did so, and after Tally made the call, Tally accompanied Dyess back to the accident scene. As the two men crossed the road with a fire extinguisher, Tally spotted the Pinto and said, "I believe that's my daughter's car." *Page 1315 
Marvin Lewis, a 23-year employee of the Mississippi Highway Patrol, arrived on the scene at about 6:45 p.m. Lewis spotted Carl Moffett standing near the wrecked cars and asked Moffett who had been driving the Oldsmobile and Moffett answered, "I was." Lewis took Moffett's drivers license and asked Moffett: "Have you been drinking?" Moffett responded, "Yes, sir, I had two beers." According to Lewis, he then arrested Moffett and put him in the back seat of Lewis' patrol car, where Moffett remained for approximately an hour while Lewis cleared the accident scene. According to Moffett, Lewis told him, "Don't get no blood on my seat."
At approximately 7:45 p.m., Lewis took Moffett to the sheriff's office in Bay Springs where Officer Thomas Boyd of the Bay Springs Police Department administered an intoxilizer test at 8:08 p.m. By this time, almost two hours had elapsed since the accident. The test revealed a blood alcohol level of 0.16%. (A level of 0.10% or higher will support a charge of driving under the influence of intoxicating liquor. See Miss. Code Ann. §63-11-30 [Supp. 1988].) Moffett was charged under Miss. Code Ann. § 97-3-47 with the crime of culpable negligence manslaughter.
Moffett's trial began on May 26, 1986. Venue was moved from Jasper to Covington County. At the beginning of trial, defense counsel asked that the record reflect that the deceased, Lisa Tally, was white and that the defendant is black. Although there were some questions raised about the prosecutor's use of his peremptory strikes to eliminate black jurors, this issue was apparently resolved, the record reflecting that one black juror was accepted by the prosecutor.
One of the witnesses called by the state was Staff Sgt. Donald W. Rawson of the Mississippi Highway Patrol. Sgt. Rawson, a specialist in accident reconstruction, testified as to his conclusions regarding the accident. Sgt. Rawson concluded that the vehicle driven by Moffett was traveling at a speed not less than 66 miles per hour when it began to lay skid marks on the road and not less than 59 miles per hour at the point of contact with the Pinto. (The speed limit in that area of Highway 15 was 55 m.p.h.) He concluded that at the point of impact Moffett's car was canted slightly to the west and the Pinto was mostly in the northbound lane with the left rear of the vehicle across the center line into the southbound lane. He testified that the right front of Moffett's Oldsmobile struck the right rear corner of the Pinto. Sgt. Rawson also concluded that the Pinto was traveling at 19 miles per hour at the time of the collision. The point of impact was 60 feet north of the north edge of Tally Road. Sgt. Rawson testified that there is a road sign on Highway 15, south of Tally Road, warning northbound motorists of a crossing over the hill. On Cross examination, Sgt. Rawson stated that in his opinion the scene of the accident did not reveal anything inconsistent with the theory that Moffett came over the hill, saw the vehicle of the deceased and tried to avoid her, and that she then pulled over into the other lane in front of him.
The state also called as an expert witness Dr. Thomas Bennett, who was the state medical examiner at that time. Dr. Bennett testified that because the human body metabolizes alcohol, decreasing the body's blood alcohol content at the rate of 0.02% per hour (as long as no additional alcohol is consumed), the intoxilizer test result of 0.16% would indicate that Moffett's blood alcohol content was approximately 0.20% two hours earlier, when the accident occurred. According to Dr. Bennett, a person with a blood alcohol content of 0.20% would have dilated pupils, his tongue would be thick, and his speech would be slurred. He would have trouble walking because his balance would be impaired.
Testifying in his own defense, Moffett stated that he had drunk two beers at around 12:30 or 1:00 p.m. the day of the accident. He stated that he drank nothing else before the accident occurred. He stated, however, that during the time he was in the back of patrolman Lewis' car, his stepfather, Willie Musgrove, came to the scene of the accident and, seeing that Moffett was in pain from the injured arm, offered Moffett some whiskey. Moffett stated *Page 1316 
that Lewis had not told him at that time that he was under arrest, but had only told him to sit in the police car. So, when Musgrove offered him the whiskey, he drank it. (Musgrove had died by the time this case went to trial; however, Otis Hardy, Jr., Moffett's brother-in-law, testified that he saw Musgrove slip a half pint of whiskey to Moffett through the window of the patrol car.)
There was no testimony whatsoever that, following the collision, Moffett exhibited any of the characteristics described by Dr. Bennett as typical for a person having a blood alcohol content of 0.20%. To the contrary, several witnesses, including Dr. Walker and other witnesses called by the state, testified that they talked with Moffett and observed his behavior after the collision, and they neither smelled alcohol on him nor saw any indication that he was under the influence of alcohol.
The jury found Carl Moffett guilty of culpable negligence manslaughter, and he was sentenced to 15 years in the custody of the Mississippi Department of Corrections. From his conviction and sentence, Moffett appeals, assigning numerous errors in the trial below.
Although the facts of this case present a close question of whether Moffett's acts were sufficient to support a finding of culpable negligence, we hold that a jury issue was made on this question. See Gibson v. State, 503 So.2d 230 (Miss. 1987);Williams v. State, 440 So.2d 312 (Miss. 1983); Gandy v.State, 373 So.2d 1042 (Miss. 1979). However, because we find that two assignments of error raised by Moffett have merit, we reverse and remand for a new trial.
 I. DID THE TRIAL COURT ERR IN EXCLUDING THE TESTIMONY OF DR. JOHN WALKER?
During the state's case-in-chief, Dr. John Walker testified as to his observations just prior to the collision between Moffett's and Tally's vehicles. After Dr. Walker's testimony, Staff Sgt. Donald W. Rawson of the Mississippi Highway Patrol testified as an accident reconstruction expert. He presented an exhibit (S-9) depicting the location of the vehicles at the time of the collision, their paths of travel after the collision, etc. The chart was not inconsistent with the testimony of Walker, but did not show the movement of the vehicles before the collision.
Moffett's counsel decided to call Dr. Walker during Moffett's case-in-chief so that Walker could refer to the exhibit and illustrate the movement of the vehicles before their impact. The rule excluding witnesses from the courtroom had been invoked. During a recess in the trial, however, one of Moffett's attorneys accompanied Dr. Walker into the courtroom, where Exhibit S-9 was on open display. Dr. Walker then briefly examined the exhibit to see if he could identify the area depicted in the diagram. He asked defense counsel if the location shown in the diagram was Highway 15, and defense counsel answered, "yes." Dr. Walker left the courtroom before trial proceedings resumed, and at no time did he hear the testimony of other witnesses.
Later, when defense counsel attempted to examine Dr. Walker regarding the state's exhibit S-9, the state's attorney objected on the ground that Walker had violated "the rule" by entering the courtroom and viewing the exhibit outside the presence of the jury. The trial judge ruled that because Walker had viewed the exhibit and consulted briefly with counsel, he could not testify in regard to the exhibit. However, the judge allowed the defense to proffer the evidence which Walker would have presented. The proffer showed that Dr. Walker had intended to take a red marker and indicate on the exhibit the paths of Moffett's vehicle and the Tally vehicle from the point where he first saw them until the point of their collision.
 DISCUSSION
Miss.R.Evid. 615 provides as follows:
 EXCLUSION OF WITNESSES
 At the request of a party the court shall order witnesses excluded so that they *Page 1317 cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
(Emphasis added). In Douglas v. State, 525 So.2d 1312 (Miss. 1988), we construed Rule 615 to mean that all witnesses — case-in-chief witnesses as well as rebuttal witnesses — should be excluded from the courtroom once the rule has been invoked, excepting, of course, those three categories specifically exempted under Rule 615. Long before the Mississippi Rules of Evidence became effective on January 1, 1986, however, the practice of excluding witnesses was recognized in this state as a means of insuring that a witness' testimony would not be influenced by the testimony of other witnesses. See ReaganEquipment Company v. Vaughn Gin Company, 425 So.2d 1045 (Miss. 1983); Commercial Credit Equipment Corp. v. Kilgore,221 So.2d 363 (Miss. 1969); Wilson v. Peacock, 111 Miss. 116, 71 So. 296 (1916); Rule 5.09, Uniform Criminal Rules of Circuit Court Practice.
The purpose of the rule excluding witnesses, or "the rule" as it is often called, is to discourage and expose falsification, inaccuracy, and collusion in witnesses' testimony. Miss.R.Evid. 615 comment. The purpose of the rule is not, and never has been, to prevent attorneys from consulting with their clients' witnesses. In Reagan Equipment Company v. Vaughn Gin Company,supra, we held the trial court in error for excluding the testimony of a witness who had consulted with the appellant's attorney during a recess for lunch and had discussed with the attorney the witness' upcoming testimony. We stated that an attorney in a trial may consult with his client's witnesses, even though those witnesses have been placed under "the rule." And inDouglas v. State, 525 So.2d 1312 (Miss. 1988), we acknowledged that it is sometimes necessary for an attorney to discuss with an excluded witness his upcoming testimony, but cautioned against attorneys misusing the legitimate practice of prepping a witness to relay other witnesses' testimony:
 [W]e recognize that attorneys need to consult with their witnesses in order to prepare them to testify. Preparing them, however, does not mean relating other witnesses' testimony. In preparing their witnesses, attorneys must be careful not to indicate specifically what other witnesses have testified about. We think preparation can be accomplished by asking generally what a witness may or may not know about a particular area of the case without asking "leading" questions or questions that indicate specifically what other witnesses have said on the matter.
Id. at 1319.
In excluding Dr. Walker's testimony relative to exhibit S-9, the trial judge in the instant case stated:
 All right, I find from the facts developed by this interrogation that the witness went into the courtroom and examined a document which had been admitted into evidence and received limited information thereto from Counsel for the Defendant — one of the Counsel for the Defendant.
 I do affirmatively find that Counsel did not intend to violate any rules of procedure or other rules regarding the conduct of witnesses of which Dr. Walker has now been called as a witness for the Defendant. However, I find that it was an [un]authorized act and that witnesses are not permitted to see and view exhibits which have been offered — admitted into evidence except when on the witness stand and, further, it is — further, that it violates the rules for Counsel to have made comment to the witness concerning the Exhibit that has been admitted into evidence. The foundation for this finding is that the testimony must be that solely of the witness, his understanding, his perception and imperception with ability to understand and testify relative to exhibits such as this, which is a recreation on paper of the accident scene. *Page 1318 
Therefore, the objection to Dr. Walker testifying concerning this Exhibit is sustained.
(R. 369-70).
We agree with the trial judge that all testimony must be that of the witness, and not that of counsel. In the instant case, however, the record is clear that defense counsel, in allowing Dr. Walker to view the state's exhibit S-9, was not attempting to influence Dr. Walker's testimony, but was merely trying to determine whether Dr. Walker could correctly identify the area depicted in the exhibit so as to properly chart the movement of the Moffett and Tally vehicles before the collision occurred.
We hold that defense counsel's action in allowing Dr. Walker to view the exhibit during a recess in the trial, where there was no opportunity for him to overhear testimony of other witnesses, fell within the acceptable area of "prepping" a witness, and did not violate the rule excluding witnesses. Furthermore, there was no other valid basis shown for the trial judge to exclude Dr. Walker's testimony relative to the state's exhibit S-9.
The state argues that, even if the trial court abused its discretion in excluding Walker's testimony concerning the exhibit, no prejudice resulted to the appellant as a result of this error, and reversal is, therefore, not required. We disagree. Dr. Walker and his wife were the only eyewitnesses to the collision except for the defendant himself. Although the exhibit S-9, drawn by Sgt. Rawson to reconstruct the details of the collision, was not substantially inconsistent with Walker's account of the collision, it omitted the crucial details of what occurred prior to the collision. The exhibit, as well as Sgt. Rawson's testimony, was presented after Dr. Walker had testified as a state's witness. The defendant decided to call Dr. Walker during the defendant's case-in-chief, not to challenge the accuracy of the exhibit, or to diminish the importance of Sgt. Rawson's diagram, but rather to augment the diagram in order to give the jury the benefit of Dr. Walker's eyewitness observation of the movements of the vehicles prior to the collision. In the context of this case, a close case factually on the question of whether or not the defendant's acts were sufficient to support a conviction for culpable negligence manslaughter, the admission of Dr. Walker's proffered testimony in connection with the exhibit might well have resulted in a different outcome. We hold that it was reversible error to exclude the testimony of Dr. Walker concerning state's exhibit S-9.
 II. DID THE TRIAL COURT ERR IN GRANTING INSTRUCTION S-3?
Instruction S-3 provided as follows:
 The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
 1. Dorothy A. Tally was a living human being; and
 2. Dorothy A. Tally died as a result of Carl Moffett operating his automobile in a culpably negligent manner; and
 3. The acts of Carl Moffett caused the death of Dorothy A. Tally in that his acts at said time and place exhibited a wanton or reckless disregard for the safety of human life, to-wit: by driving his automobile at an excessive rate of speed while under the influence of intoxicating liquors; failing to maintain a proper lookout for other vehicles then and there on the highway; and striking in the rear the vechile [sic] then and there occupied by Dorothy A. Tally; and
 4. That said killing and slaying occurred on the 2nd day of March, 1985, in the Second Judicial District of Jasper County, Mississippi,
 then you should find the defendant, Carl Moffett, guilty of manslaughter.
[Emphasis added]. It is a rule in this state that an instruction should not be given if there is no evidence to support the instruction. Lancaster v. State, 472 So.2d 363, 366 (Miss. 1985); Norman v. State, 385 So.2d 1298, 1301 (Miss. 1980);McBroom v. State, 217 Miss. 338, 64 So.2d 144 (1953). InMcBroom, this Court quoted with approval from 53 Am.JurTrials § 579, p. 455: *Page 1319 
 An instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented thereby, and is well calculated to induce them to suppose that such state of facts in the opinion of the Court is possible under the evidence and may be considered by them.
McBroom at 144-45.
In the instant case there was absolutely no evidence before the jury upon which they could make a finding that the collision was caused by any failure on Moffett's part to keep a proper lookout for other vehicles. To the contrary, the record indicates that Moffett spotted the Pinto as soon as he reached the crest of the hill and that he immediately moved into the other lane of traffic in an effort to avoid hitting the Pinto.
Instruction S-3 should not have been given to the jury, then, because it contained language which was a comment on evidence not in the record. Furthermore, by use of the term "to-wit," followed by a list of specific acts, the instruction attempted to give definite examples of what constitutes wanton and reckless disregard for the safety of human life. While we do not pass upon the propriety of giving examples, certainly the trial court cannot give an example of evidence which did not exist. We hold that the trial court erred in granting state instruction S-3.
For the reasons stated, we reverse Moffett's conviction and sentence, and remand this case for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
PITTMAN, J., not participating.