# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01092-SCT

*HENRY STURDIVANT, JR. a/k/a HENRY A. STURDIVANT, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/1998 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED -07/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: Auugst 12, 1999 | |

**BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

### Procedural History

¶1. Appellant Henry Sturdivant, Jr. (Sturdivant) was tried before a Lauderdale County Circuit Court jury for sale of cocaine. He was found guilty and given a fifteen (15) year sentence, with ten (10) years suspended, in the custody of the Mississippi Department of Corrections.

### Statement of the Facts

¶2. Lauderdale County Deputy Sheriff Joshua Coleman was working as an undercover narcotics officer in Lauderdale County on January 8, 1997. He was fitted with a body transmitter underneath his clothing, and his automobile had a concealed camera under the visor pointed toward the driver's window.

¶3. As he pulled up to the corner of 32nd Avenue and 11th streets in Meridian at 5:29 p.m., he saw two black males. Deputy Coleman recognized one of the individuals as Jimmy Lee Ivy, but he did not know the

other. He asked the two "could anybody serve me a 20?" The previously unknown individual, Sturdivant, came to his window and gave him what appeared to be cocaine in exchange for twenty dollars ($20). There were streetlights on, and Coleman got a good look at Sturdivant in the "hand to hand" exchange. Sturdivant's face was also captured on the hidden video.

¶4. Coleman later gave a description of the two suspects including the Band-Aid on the right side of Sturdivant's face. The Meridian Gang Task Force took these descriptions and went back to the scene to identify the suspects. When presented with "mugshot" photographs of the suspects by Detective Joel Walters, Coleman identified Sturdivant as the seller from whom he purchased the cocaine.

¶5. At trial, Coleman testified that he had "no doubt" that Sturdivant was the person who had sold him the cocaine. Walters corroborated that Coleman had given a detailed description of the suspect and had identified "mugshot" photographs of Sturdivant. Upon objection by the defense, these mugshots were not admitted into evidence because the trial court determined that they had suggestive police identification information written on them, such as "MPD," "DOB," etc.

¶6. State's Exhibit 4 was introduced into evidence as being the substance sold to Coleman by Sturdivant. Jamie N. Johnson from the Mississippi Crime Laboratory testified that this exhibit "contained .14 grams of cocaine."

¶7. During jury deliberations, the jury requested by handwritten note that they be allowed "to see Henry Sturdivant in person or by photo if possible." The trial court offered to allow either the previous unallowed mugshot photos with the objectionable markings removed or a short viewing of Sturdivant in front of the jury box. The defense had argued to the jury that this was a case of mistaken identity and that Sturdivant's was not visible on the video. The prosecution argued that the jury needed to see for themselves that Sturdivant was the individual on the video. Over Sturdivant's objection, the trial court allowed the viewing to occur.

¶8. On April 8, 1998, Sturdivant was found guilty. On May 8, 1998, he was sentenced to fifteen years, with ten suspended, in the custody of the Mississippi Department of Corrections. On May 15, 1998, Sturdivant filed a Motion for a New Trial arguing that the jury should not have been allowed the mid-deliberation viewing which prejudiced his right to a fair and impartial trial. He also filed a Motion for J.N.O.V. arguing the evidence was insufficient as a matter of law. On May 28, 1998, the trial court denied both of Sturdivant's motions.

¶9. Aggrieved, Sturdivant timely appeals to this Court and raises the following issues:

> **I. WHETHER A DEFENDANT IS DENIED A FAIR TRIAL, DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS WHEN, AFTER THE EVIDENCE IS CLOSED AND DELIBERATIONS HAVE BEGUN, THE TRIAL JUDGE, UPON REQUEST BY THE JURY, REQUIRES THE DEFENDANT TO PARADE IN FRONT OF THE JURY, FOR A SECOND VIEW OF HIM, WHERE IDENTIFICATION IS THE PRIMARY ISSUE, AND THE JURY RETIRES AGAIN FOR FURTHER DELIBERATIONS AND RETURNS A VERDICT OF GUILTY.**
>
> **II. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT A VERDICT OF GUILTY OR THE RESULT OF PREJUDICE AND BIAS AND THE CONVICTION**

**SHOULD BE REVERSED AND THE DEFENDANT DISCHARGED.**

**STANDARD OF REVIEW**

¶10. In *Young v. City of Brookhaven*, 693 So.2d 1355 (Miss.1997), we stated our standard of review concerning a trial judge's decision regarding the admission of evidence:

Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. *Baine v. State*, 606 So.2d 1076, 1078 (Miss.1992); *Wade v. State*, 583 So.2d 965, 967 (Miss.1991). However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. *Baine v. State of Mississippi*, 606 So.2d at 1078. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. *Id*. However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. *Jackson v. State*, 645 So.2d 921 (Miss.1994); *Newsom v. State*, 629 So.2d 611, 612 (Miss.1993); *Collins v. State*, 594 So.2d 29, 34 (Miss.1992). Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. *Parker v. State*, 606 So.2d 1132, 1137-1138 (Miss.1992).

*Young*, 693 So.2d at 1358 (*quoting Peterson v. State*, 671 So.2d 647, 655-56 (Miss.1996)).

¶11. On a question of overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Nelson v. State*, 722 So.2d 656, 661 (Miss. 1998); *Thornhill v. State*, 561 So.2d 1025, 1030 (Miss.1989). Only when the verdict of the jury is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will we disturb that verdict on appeal. *Watson v. State*, 722 So.2d 475, 480 (Miss. 1998); *Benson v. State*, 551 So.2d 188, 193 (Miss.1989).

¶12. The standard of review of a post-trial motion is abuse of discretion. *Flowers v. State*, 601 So.2d 828, 833 (Miss.1992) (*citing Robinson v. State*, 566 So.2d 1240, 1242 (Miss.1990)). As stated in *Johnson v. State*, 642 So.2d 924 (Miss.1994), "[a] motion for new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Johnson*, 642 So.2d at 928 (collecting authorities).

**LEGAL ANALYSIS**

**I. WHETHER A DEFENDANT IS DENIED A FAIR TRIAL, DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS WHEN, AFTER THE EVIDENCE IS CLOSED AND DELIBERATIONS HAVE BEGUN, THE TRIAL JUDGE, UPON REQUEST BY THE JURY, REQUIRES THE DEFENDANT TO PARADE IN FRONT OF THE JURY, FOR A SECOND VIEW OF HIM, WHERE IDENTIFICATION IS THE PRIMARY ISSUE, AND THE JURY RETIRES AGAIN FOR FURTHER DELIBERATIONS AND RETURNS A VERDICT OF GUILTY.**

¶13. Sturdivant contends that he was prejudiced by the trial court's allowing the jury to view him once

deliberations had begun. The record indicates that the jury requested by hand-written note to view Sturdivant or a picture of him after deliberations had begun. The trial court offered to allow the mugshot photograph with the objectionable markings removed to go into the jury room or have the jury return to the box for a short viewing of Sturdivant. Defense counsel objected to both options, but the trial court decided to allow the jury a short viewing. The trial court explained, as follows:

> The jury's duty is to make a decision as to whether or not the evidence is sufficient to cause them to believe beyond a reasonable doubt that either or both of these defendants are guilty. Obviously, they are . . . struggling with the issue of identification versus misidentification, and the jury has made a specific request to view Mr. Sturdivant in person. It's unambiguous and I think that during the course of the trial the jury was asked by counsel to look at the defendant and draw their own conclusions as to whether or not that is the person on the video. The videotape is in evidence, and the TV and VCR are in the jury room. I am going to acquiesce [sic] the jury request because I think they are struggling to do what they believe to be the right and correct thing under the evidence and they need some help in making that determination. What I intend to do is have the jury brought back in and sit in the jury box, and David ask you to have Sturdivant to stand up and walk out in front of the jury box and stand there for about ten seconds and turn around and walk back and have a seat next to you at the counsel table. Then I will issue the jury back into the jury room for further deliberations.

¶14. Sturdivant cites *Perkins v. State*, 253 Miss. 652, 178 So.2d 694 (1965), for the proposition that it is reversible error for the trial court to allow the jury to view the defendant once deliberations have begun. In *Perkins*, the trial court committed reversible error where it granted a jury request to view the victim's scars although they had seen them during the trial. 253 Miss. at 656, 178 So.2d at 695.

¶15. Furthermore, the *Perkins* Court said as follows:

> Ordinarily, the reopening of a case after it has been submitted to the jury and before verdict for the purpose of receiving further evidence is a matter addressed to the sound judicial discretion of the trial court. *Lee v. State*, 201 Miss. 423, 29 So.2d 211 (1946), suggestion of error overruled in 201 Miss. 423, 30 So.2d 74 (1947); reversed on other grounds, 332 U.S. 742, 68 Sup.Ct. 300, 92 L.Ed. 330; mandate conformed to 203 Miss. 264, 34 So.2d 736.

> This rule imports a requirement that a **cogent reason** be found to exist which demands reopening in order that justice may be done. Moreover, when a case is reopened for the reception of further evidence, it must be done in such a manner that the rights of all parties will be protected and ample opportunity afforded them for cross examination or rebuttal, and even for requesting additional instructions, if the matters introduced should reasonably require them.

253 Miss. at 655, 178 So.2d at 695-96 (emphasis added). Sturdivant argues that *Perkins* is indistinguishable from his case, and thus his conviction should likewise be reversed.

¶16. However, the *Perkins* Court ultimately found that under the circumstances in a prosecution for assault and battery with intent to kill and murder, "[i]t is doubtful that it (the viewing of the victim's scars) had any probative value and was of a character peculiarly calculated to inflame and prejudice the jury. *Riley v. State*, 248 Miss. 177, 157 So.2d 381 (1963)." 253 Miss. at 655-56, 178 So.2d at 696. Such a finding is distinguishable from the instant case because here the jury wanted to see the defendant Sturdivant in order to properly identify and not any victim or victim's scars.

¶17. Moreover, the trial court here followed the procedure outlined in **Perkins** by giving the defense an opportunity to be heard and finding that a **cogent reason** for the viewing. Specifically, the trial court found the proper identification of Sturdivant to necessitate the brief viewing. Thus, the viewing here was not peculiarly calculated to inflame and prejudice the jury.

¶18. In **Lee v. State**, 383 So.2d 821, 823 (Miss. 1980), this Court allowed the state to reopen its case. **Id.** There, the jury retired and took into the jury room, along with other physical evidence, State's Exhibit A, an investigative report. The jury discovered that page 3 of the report was missing, and so informed the trial judge, who ordered the cause to be reopened to explain the omission. The agent testified that the page was inadvertently omitted. Lee's counsel was afforded an opportunity to cross-examine and did engage in lengthy cross-examination of the agent. This Court determined that the trial judge did not abuse his discretion in reopening the case for this one purpose, and there was no indication that Lee was prejudiced by such action. **Id.** at 823. Similarly, here the trial court took into consideration defense counsel's objections before determining that the circumstances necessitated allowing the jury to view Sturdivant..

¶19. Finally, as to the alleged prejudice to Sturdivant, it should be noted that the central defense was one of mistaken identity. In its closing argument, the defense stated as follows:

> View the tape, listen to it carefully. Recall what has been testified to today and take it all into consideration. And we submit that after you do that, a lot of doubt as to whether or not these two young men were involved in a transaction that day and whether or not Josh Coleman was biased and possibly coached through this entire incident.

***

> Henry (Sturdivant) has been sitting here, whatever that is, ten feet, fifteen feet from you the whole trial, as close to you as he can. You can look at him now. Look at the person on the video. It's not him. You know, some you get back and say well, it might be. Well once again, might be doesn't matter. The video is clear enough where you can definitely tell it isn't him, and once again, this isn't a question of sort of a foggy video, and you can't really exclude him and you-but you could include him.

The State also invited the jury to determine for itself that the face on the video tape was Sturdivant. "Look at the videotape, and that's all you need to do."

¶20. Therefore, the proper identification was the central issue in this case for the jury to decide. This Court has stated that "considerable discretion" is granted to a trial court in deciding if a case should be reopened. **Meeks v. State,** 604 So.2d 748, 755 (Miss. 1992); accord, **Smith v. State**, 646 So.2d 538 (Miss. 1994). We find no abuse of discretion by the trial court here. The brief viewing of Sturdivant could just as easily have created reasonable doubt and worked to his favor. Thus, as the trial court noted, there was sufficient evidence for finding that the jury was interested in resolving any questions about the identity of the suspect. Sturdivant's contention of error is therefore without merit.

### II. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT A VERDICT OF GUILTY OR THE RESULT OF PREJUDICE AND BIAS AND THE CONVICTION SHOULD BE REVERSED AND THE DEFENDANT DISCHARGED.

¶21. Sturdivant lastly contends that the testimony of Deputy Coleman was contradictory, inconsistent, and

self-serving. Given this supposed confusing testimony, Sturdivant argues that there was insufficient evidence to support his conviction.

¶22. In *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993), we summarized the standard of review for challenges to the sufficiency of the evidence:

> The three challenges by McClain (motion for directed verdict, request for peremptory instruction, and motion for JNOV) challenge the legal sufficiency of the evidence. Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled McClain's motion for JNOV. *Wetz v. State*, 503 So.2d 803, 807-08 (Miss.1987). In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. *Esparaza v. State*, 595 So.2d 418, 426 (Miss.1992); *Wetz* at 808; *Harveston v. State*, 493 So.2d 365, 370 (Miss.1986); *May v. State*, 460 So.2d 778, 780-81 (Miss.1984); *Callahan v. State*, 419 So.2d 165, 174 (Miss.1982). The credible evidence consistent with McClain's guilt must be accepted as true. *Spikes v. State*, 302 So.2d 250, 251 (Miss.1974). The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Wetz* at 808; *Hammond v. State*, 465 So.2d 1031, 1035 (Miss.1985); *May* at 781. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. *Neal v. State*, 451 So.2d 743, 758 (Miss.1984); *Gathright v. State*, 380 So.2d 1276, 1278 (Miss.1980). We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Wetz* at 808; *Harveston* at 370; *Fisher v. State*, 481 So.2d 203, 212 (Miss.1985).

625 So.2d at 778. Here, the same standard applies as Sturdivant's last unsuccessful challenge was also a Motion for Judgment Notwithstanding the Verdict (J.N.O.V.).

¶23. Sturdivant states that the first inconsistencies came when Coleman testified that "[w]hen I rolled up, I said I need a 20. Right then and there he (Sturdivant) turned around to Mr. Ivy and the transaction took place." On cross-examination, Coleman admitted that in his official report he had stated that he talked to Ivy first.

¶24. Coleman also admitted that Jimmy Ivy was "known to sell narcotics" according to police intelligence reports. However, this particular undercover operation was initially targeted at another individual not involved in this case. When the original target was not there, Coleman made the purchase from whoever was on the corner, in this case Sturdivant and Ivy.

¶25. Coleman further testified that the standard procedure for identifying unknown suspects is to show other agents the video who then attempt to identify the suspect by face or by going back to the scene and asking locals. This procedure led to the identification of Sturdivant here. The problem lies in the fact that the task force agents who identified Sturdivant by going back to the scene presented Coleman with only one photograph of the suspect. Sturdivant argues that in effect the task force identified him on behalf of Coleman.

¶26. The leading Mississippi case on suggestive photograph identification is *York v. State*, 413 So.2d 1372, 1374 (Miss. 1983), which stated as follows:

In February, 1967, the United States Supreme Court in three decisions initiated an in-depth search of the inherent problems with accuracy of identification testimony. It is a haunting question. When a false identification results in a conviction, two unfortunate developments follow: an innocent person is convicted, and a criminal remains loose in society.

These three decisions, called by commentators the "Wade trilogy," are: *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

These cases and their progeny are the present guidelines this Court must follow in determining the competency of identification testimony, whenever this issue is called into question.

*York*, 423 So.2d at 1374. Furthermore, this Court stated in *Nicholson v. State*, 523 So.2d 68, 72 (Miss. 1988), that the *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972), factors are to be analyzed in assessing the validity of identification testimony, as follows:

*York* goes on to set out the *Neil* factors to consider in determining whether these standards have been fulfilled:

1. Opportunity of the witness to view the accused at the time of the crime;

2. The degree of attention exhibited by the witness;

3. The accuracy of the witness's prior description of the criminal;

4. The level of certainty exhibited by the witness at the confrontation;

5. The length of time between the crime and the confrontation.

523 So.2d at 72.

¶27. Applying these factors to the present case,

1. Opportunity to view the accused.

¶28. Coleman had a good opportunity to view Sturdivant during this illegal narcotics transaction on January 8, 1997. Coleman first saw the suspect at a distance of only ten to fifteen feet and then saw him close-up when he approached the vehicle.

2. Degree of attention.

¶29. Coleman was carefully attentive to the suspect's physical characteristics which included the Band-Aid on the right side of his face.

3. Accuracy of prior description.

¶30. Coleman gave an accurate description of the suspect immediately after the "buy" which was used by the task force to locate Sturdivant as the seller. Moreover, Coleman's identification of Sturdivant was corroborated by Detective Walters who said that Coleman gave a detailed description of the suspect.

4. Witness's level of certainty at confrontation.

¶31. Coleman was equally sure that Sturdivant was the person involved when he first saw the photograph a few days after the incident. He had no doubt that Sturdivant was the one who sold him the cocaine.

5. Length of time between the crime and the confrontation.

¶32. Sturdivant was arrested less than two months later (March 3, 1997), and was identified by Coleman at trial on April 7 and 8, 1998.

¶33. The jury also had the brief image of Sturdivant on the video to weigh in their deliberations. Thus, the State has satisfied the *Neil* factors because there is ample record evidence to support a determination that there was no substantial likelihood of irreparable misidentification in allowing the in-court identification, nor was there substantial likelihood of misidentification in allowing the testimony of the out-of-court identification itself.

¶34. In *Smith v. State*, 492 So.2d 260 (Miss. 1986) (superseded on other grounds by the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 *et seq.* (Supp. 1998), this Court found that any error involving the in-court identification of the suspect, which was "a result of the pre-trial photograph lineup, was harmless beyond a reasonable doubt." *Id*. at 268. There, during the photograph lineup, the witnesses picked Smith's picture because they were allowed to see the names on the backs of the photographs. One witness alleged that he was left alone with the pictures. It was undisputed that the names were indeed on the backs of the five photographs used in the lineup. *Id.* Therefore, the suggestive nature of the pretrial identification of Sturdivant was harmless error, if any.

¶35. In *Doby v. State*, 532 So.2d 584, 591 (Miss. 1988), we affirmed Doby's conviction for the sale of cocaine although four witnesses testified that Doby was in the State of Illinois at the time of the alleged incident. *Id.* at 590. On appeal, Doby contended the conviction to be against the overwhelming weight of the evidence. *Id.* In affirming Doby's conviction, we recognized the rule that "persons may be found guilty on the uncorroborated testimony of a single witness," who happened to be an undercover officer. *Id.*; *See also Ragland v. State*, 403 So.2d 146 (Miss.1981); *Clanton v. State*, 279 So.2d 599 (Miss.1973); *Holt v. State*, 186 Miss. 727, 191 So. 673 (1939). Moreover, we have stated that a jury may accept the testimony of some witnesses and reject that of others. In other words, the credibility of witnesses is not for the reviewing court, but only for the jury. *See Groseclose v. State*, 440 So.2d 297, 300-01 (Miss.1983). As to the question of the "weight of the evidence," the strength or weakness of testimony is not measured by the number of witnesses produced by a particular party. *Id.* at 300; *Bond v. State*, 249 Miss. 352, 162 So.2d 510 (1964); *Spiers v. State*, 231 Miss. 307, 94 So.2d 803 (1957).

¶36. Under our criminal justice system, the jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses. *Winters v. State*, 449 So.2d 766, 771 (Miss.1984). There is sufficient record evidence to affirm the conviction when weighed in a light most favorable to the state. Therefore, this Court finds no merit to this assignment of error.

## CONCLUSION

¶37. The proper identification was the central issue in this case for the jury to decide. Therefore, the trial court did not abuse its "considerable discretion" in allowing the jury to briefly view the defendant after jury

deliberations began.

¶38. There is ample record evidence to support a determination that there was no substantial likelihood of irreparable misidentification in allowing the in-court identification, nor was there substantial likelihood of misidentification in allowing the testimony of the out-of-court identification itself. There is sufficient record evidence to support the jury verdict when all of the evidence is weighed in a light most favorable to the state. Accordingly, the conviction and sentence of Henry Sturdivant, Jr. and the judgment of the Circuit Court of Lauderdale County are, therefore, affirmed.

¶39. **CONVICTION OF SALE OF COCAINE AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN (10) YEARS SUSPENDED, FIVE (5) YEARS TO SERVE, AND FIVE (5) YEARS REPORTING PROBATION, WITH CONDITIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR.**