# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01429-SCT

*DONALD RAMIRO COUSAR a/k/a "COOP"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/20/2002 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILLIP BROADHEAD |
| | THOMAS M. FORTNER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | ELEANOR JOHNSON PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/17/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.     Donald  Ramiro Cousar was tried for sale of cocaine before a Hinds County Circuit Court  jury on April 10, 2002.  Cousar did not testify or call any other witnesses.  He was found guilty and sentenced to  twenty years in the custody of the Mississippi Department of Corrections.  From that conviction and sentence, he appeals to this Court, citing as error the trial court's failure to fully instruct the jury regarding witness identification testimony, failure to grant a directed verdict, failure to grant his motion for J.N.O.V. or a new trial, and

cumulative error.  We find no merit to these assignments of error and thus affirm the trial court.

## FACTS

¶2.    On May 1, 2001, Reserve Officer Sergeant  Jim Stegall (Stegall) was working with Officer James McGowan (McGowan) and other members in the  Narcotics Division of the Jackson Police Department.  They had received information that narcotics were being sold from Baker's Motel in Jackson, Mississippi.  The agents planned an undercover operation in which Stegall, a reserve officer who completed his training at the police academy in 1995, would attempt to purchase drugs at the motel from a suspect known as Coop.[1]  McGowan and others would be nearby, out of sight, listening to the conversation, if any should develop, between Stegall and Coop or any other would-be drug salesman.  The conversation would be tape recorded via a body wire worn by Stegall and preserved for evidentiary purposes.

¶3.    Upon arriving at Baker's Motel, Stegall asked to see Coop and was directed to the motel's interior lot.  Coop himself subsequently directed Stegall to a motel room where Stegall purchased eight rocks of cocaine from Coop.  The transaction was heard in its entirety by Officer McGowan and other members of the Narcotics Division of the Jackson Police Department.  Subsequent investigation by Officer McGowan identified Coop, who did maintenance and security work at the Baker's Motel, as being Donald Ramiro Cousar.

---

[1]The nickname of defendant Donald Ramiro Cousar (hereafter Cousar or Coop).

Cousar was not arrested immediately due to an on-going investigation, but one month later he was arrested for the sale of cocaine to Stegall.

¶4.     At his trial Cousar was identified in court by Officers McGowan and Stegall as being Coop, the seller of the eight rocks of cocaine.  Additionally, Officer Stegall testified that the tape recording made of the purchase was an accurate representation of what occurred on May 1, 2001.  The tape was played in its entirety for the jury, and Officer Stegall identified not only his own voice but also Coop's voice on the tape.  Cousar did not testify, nor did he call any other witnesses.

## ANALYSIS

### I.  JURY INSTRUCTIONS ON WITNESS IDENTIFICATION.

¶5.     Before trial, counsel for Cousar submitted jury instruction D9-A, which read as follows:

> The Court instructs the jury that whether DONALD RAMIRO COUSAR was the person who committed the crime as alleged and charged in the indictment in this case is a matter for you to decide.  The state has the burden of proving beyond a reasonable doubt the identity of the perpetrator of the crime.  If you are not convinced from the evidence beyond a reasonable doubt that DONALD RAMIRO COUSAR was the person who committed the crime, you must find him not guilty.
> 
> Identification testimony is an expression of belief or impression by the witness.  Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.  In appraising the identification testimony of a witness, you should consider the following: a) the opportunity that the witness had to view the defendant when the crime occurred; b) the witness's attention at the time; c) the accuracy of any prior descriptions of the defendant by the witness; d) the witness's level of certainty at

3

the initial post crime confrontation, and e) the length of time between the crime and the confrontation.

        If after considering all of the above you have a reasonable doubt that DONALD RAMIRO COUSAR is the person who committed the crime as alleged by the State of Mississippi, it is your sworn duty to find him "not guilty."

¶6.     The State objected to factor "c" (accuracy of any prior descriptions of the defendant by the witness) stating that it did not apply to the facts of the case because none of its witnesses had given any prior descriptions of the defendant, and it would confuse the jury to leave that provision in the instruction. In response, counsel for Cousar pointed out that Officer McGowan's report did reflect a physical description of Coop[2] and that it could be established by inference that the description must have come from Officer Stegall. The trial judge, however, recalled that on cross-examination, Stegall had "specifically [been asked] if he provided that description and he said no." Defense counsel then acknowledged that the description might have come from the informant. The trial court concluded that it was never

---

[2] During cross examination, McGowan had been questioned regarding a description found in McGowan's report, as follows:

    Q. There is no description of the suspect made in your report, is there?
    A. Not in my report, other than the a/k/a/ Coop.
    Q. There's no physical description?
    A. Not in my report.

Defense counsel then asked and was granted permission to approach McGowan to show him the report, and continued:

    Q. You describe him there as being five-eleven, approximately 200 pounds, black skin color, brown eyes; is that correct?
    A. That's correct.

Defense counsel did not attempt to clarify this inconsistency, nor did he in any way call attention to any similarity or lack thereof, to the defendant present in the courtroom. He closed his cross examination by asking McGowan if he had seen Cousar since he went to jail, to which McGowan replied "not that I know of."

       When Stegall, the only eyewitness testifying, was asked if the aforementioned physical description was that of Coop, he replied "No. The description you heard on that tape was not of Mr. Coop."

established who provided a physical description of the person known as Coop as being 5'11"
and 200 pounds. Therefore, provision "c" was redacted.

¶7. The trial court further concluded that any inconsistencies or discrepancies in the
testimony were covered by instruction C-2, which read as follows:

> You, as jurors, are the sole judges of the credibility of the
> witnesses and the weight their testimony deserves.
> You should carefully scrutinize all the testimony given,
> the circumstances under which each witness has testified, and
> every matter in evidence that tends to show whether a witness
> is worthy of belief. Consider each witness' objectivity, state of
> mind, demeanor and manner while on the stand. Consider the
> witness' ability to observe the matters as to which he or she has
> testified, and whether he or she impresses you as having an
> accurate recollection of these matters. Consider the extent to
> which it is contradicted by other evidence in the case.
> Inconsistencies or discrepancies in the testimony of a witness,
> or between the testimony of different witnesses, may or may not
> cause the jury to discredit such testimony. Two or more persons
> witnessing an incident or a transaction may see or hear it
> differently; and innocent misrecollection, like failure of
> recollection, is not an uncommon experience. In weighing the
> effect of a discrepancy, always consider whether it pertains to
> a matter of importance or an unimportant detail, and whether the
> discrepancy results from innocent error or intentional falsehood.
> After making your own judgment, you will give the testimony
> of each witness such credibility, if any, as you may think it
> deserves.

Redacted instruction D-9A, as well as C-2, were given as jury instructions.

¶8. Citing **Davis v. State**, 568 So. 2d 277 (Miss. 1990), Cousar argues that the trial court
erred in redacting factor "c" from his proposed jury instruction 9-A, because the revised
instruction failed "to fully instruct the jury as to all the elements required for proper

5

identification." His reliance on *Davis* is misplaced, however. The instruction at issue in

*Davis* originally read as follows:

> The Court instructs the Jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and the circumstances surrounding the crime. One of the issues in this case is the identification of George Lee Davis as the perpetrator of the crime. As with each element of the crime charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict George Lee Davis you must be satisfied beyond a reasonable doubt of the accuracy of the identification of George Lee Davis. If, after considering all of the evidence concerning the crime and the witness' identification of George Lee Davis as the person who committed the crime, you are not convinced beyond a reasonable doubt that he is the person who committed the crime, then you must find him not guilty.
>
> Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the identification testimony of a witness, you should consider the following:
> *1) Did the witness have an adequate opportunity to observe the offender?*
> *2) Did the witness observe the offender with an adequate degree of attention?*
> *3) Did the witness provide an accurate description of the offender after the crime?*
> *4) How certain is the witness of the identification?*
> *5) How much time passed between the crime and the identification?*
> *If, after examining all of the testimony and the evidence, you have a reasonable doubt that George Lee Davis was the person who committed the crime, then you must find George Lee Davis not guilty.*

*Id.* at 280 (emphasis in original).

¶9.     Cousar claims that this Court approved the above instruction in *Davis* , but that is not

correct. To the contrary, this Court found that the trial judge's decision to strike the

6

italicized portion of the above instruction was not erroneous, and affirmed. While it is true that this Court found the five factors in the italicized portion of the instruction "correctly states our case law and *could have been granted*," id. (emphasis added), we clearly did not require that all five factors must be found in every case. *Id*. at 280.

¶10. The general rule is that an instruction is not to be given if it is not supported by evidence. *Haggerty v. Foster*, 838 So. 2d 948, 955 (Miss. 2002) (citing *Dennis v. State*, 555 So. 2d 679, 683 (Miss. 1989); *Moffett v. State*, 540 So. 2d 1313 (Miss. 1989); *Nicolaou v. State*, 534 So. 2d 168 (Miss. 1988)). Granting instructions not supported by evidence is error. *Id*. The trial court found that a physical description of Cousar was not provided by Officer Stegall and that the source of the description mentioned in Officer McGowan's testimony was unclear, and thus concluded that the reference to "prior description of the defendant by the witness" was not supported by the record and should not be given. Therefore, based upon the record, the trial court did not err in redacting factor "c" from jury instruction 9A under the facts of this case.

¶11. Cousar's reliance upon *Warren v. State*, 709 So. 2d 415, 421 (Miss. 1998), is also misplaced. In *Warren,* reversible error was found because no identification instruction was given. *Id*. In the present case, unlike *Warren*, the record reflects that the jury was given proper instructions for identification testimony, given the facts of the case. Jury instruction C-2 covered not only "inconsistencies" or "contradictions" in the testimony of a single witness or between different witnesses, but also the conflicting testimony about the

7

significance of a description given for someone else. The credibility of a witness is a question of fact for the jury to resolve.

¶12. When determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole to determine whether a jury has been incorrectly instructed. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Haggerty*, 838 So. 2d at 953 (citing *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997)). It is not proper to consider excerpts from jury instructions or to evaluate portions of jury instructions out of context, since jury instructions must be considered with the other instructions given. *Id.* at 954.

¶13. This issue is without merit.

## II. SUFFICIENCY AND WEIGHT OF THE EVIDENCE.

¶14. Challenges to the sufficiency of the evidence (raised by motions for directed verdict and for JNOV) and challenges to the weight of the evidence (raised by motions for a new trial) raise similar issues. This Court has set forth the standards for the challenges to the former, as follows:

> Our standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee [the State], giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant [Cousar] that reasonable men could not have arrived at a

8

contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Pruitt v. State*, 807 So. 2d 1236, 1242 (Miss. 2002) (citing *Coleman v. State*, 697 So.2d at 787-88).

¶15.    This Court's standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. *Thornhill v. State*, 561 So.2d 1025, 1030 (Miss.1989), *rehearing denied*, 563 So.2d 609 (Miss.1990). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Benson v. State*, 551 So.2d 188, 193 (Miss.1989) (*citing McFee v. State*, 511 So.2d 130, 133-134 (Miss.1987)). Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. *Mitchell v. State*, 572 So.2d 865, 867 (Miss.1990).

*Powell v. State*, 806 So. 2d 1069, 1133 (Miss. 2001) (quoting *Herring v. State*, 691 So.2d 948, 957 (Miss.1997)).

¶16.    Cousar argues that the trial court erred in denying his motions for a directed verdict or a J.N.O.V. because he should not be found guilty by the uncorroborated testimony of a single witness in a case where there was neither video nor photographs taken of the alleged

9

cocaine purchase. He also argues that there was insufficient evidence for determining the identity of the mysterious Coop. However, this Court has stated that a single witness's uncorroborated testimony is sufficient to support a conviction:

> With this reasoning in mind, the Court holds that the testimony of Conner was legally sufficient to support Doby's conviction for the sale of cocaine. This Court recognizes the rule that persons may be found guilty on the uncorroborated testimony of a single witness. See ***Ragland v. State***, 403 So. 2d 146 (Miss. 1981).

***Doby v. State***, 532 So. 2d 584, 591 (Miss. 1988).

¶17. In determining what should be considered in assessing the validity of identification testimony, this Court has stated as follows: "we consider 'whether or not substantial evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted' and we will disturb the findings of the lower court 'only where there is an absence of substantial credible evidence supporting it'." ***McDowell v. State***, 807 So. 2d 413, 418-19 (Miss. 2001) (citing ***Brooks v. State***, 748 So.2d 736, 741 (Miss. 1999)).

¶18. The record reflects that Cousar was identified in the court room by Officer Stegall as the person from whom he purchased eight rocks of cocaine. Officer Stegall testified to having met Cousar before[3] and to negotiating the purchase with him in the Baker Motel room

---

[3]On cross-examination about the day he purchased the cocaine, Officer Stegall was asked:
Q. You did not know Coop at that time?
A. I had met him before - -
(at that point the prosecutor objected and there was discussion outside the presence and hearing of the jury, in which the prosecutor stated he wanted to make the court aware that the defense was "about to open the door" to testimony of other crimes.) When the jurors returned, nothing was mentioned to them about the answer given by Stegall, and defense counsel proceeded with different questions.

10

were face to face for several minutes initially, then again 5 or 10 minutes later after Cousar returned with the cocaine for a total time in the motel complex of "30 to 45 minutes." Officer Stegall also watched Cousar through the motel room window while Cousar was going to get the cocaine and returning with it. This took place at approximately 3:30 p.m. on May 1, 2001.

¶19. Officer Stegall stated no prior physical descriptions of Cousar, although he did identify Cousar's voice on the tape recording of the cocaine purchase, as it was played for the jury. He had previously testified that the tape "correctly represented the transaction" between them. The period of time between Officer Stegall's face-to-face encounter with Cousar for the alleged purchase and Cousar's subsequent arrest and later identification was a month and four days.

¶20. As the record shows, Officer Stegall's testimony more than adequately meets the requirements for a legally sufficient identification of Cousar. The credibility of witnesses and responsibility for weighing and considering conflicting evidence is for the jury, not the reviewing court. *Sturdivant v. State*, 745 So. 2d 240, 247 (Miss. 1999).

¶21. This issue is without merit.

### III. CUMULATIVE ERROR.

¶22. This Court may reverse a conviction and sentence based on the cumulative effect of errors that independently would not require reversal. *Coleman v. State*, 697 So.2d at 787. To this end, Cousar reiterates his arguments regarding the identification process and regarding the failure to direct a verdict, grant a JNOV or a new trial in favor of Cousar, all

11

of which have been previously considered and found without merit. Cousar fails, however, to note that ***Coleman*** further states that: "Where there was no reversible error in any part, so there is no reversal error to the whole." ***Id***.

¶23. Cousar also argues that it was error for the trial judge to deny a defense motion for a mistrial after the State made improper statements during closing argument. The assistant District Attorney, while recounting the testimony which had been given and what the State had to prove, said "Additionally, we had to prove that this occurred on May 1 of 2001. You haven't heard anything to contradict when this happened- -. " At this point, an objection was made by Cousar's counsel, who argued that the statement was a direct comment on the defendant's right to remain silent and asked for a mistrial or at the least, a cautionary instruction. The trial judge then reminded the jury of his instruction regarding Cousar's right not to testify, which was previously given them, and re-read the instruction to them. He stated "you must not hold it against the defendant in any way because he did not testify. That's his constitutional right." After asking the jurors "are there any of you on the jury that cannot follow that instruction" and "are there any of you that cannot disregard that comment" and seeing no raised hand, the judge denied the motion for a mistrial. Cousar argues that the judge's protracted cautionary statement, in and of itself, is error, but fails to cite any authority to support his assignment of error. Failure to cite any authority is a procedural bar, therefore this Court is under no obligation to consider this argument. ***Id.***

¶24. This issue is without merit.

## CONCLUSION

12

¶25. Considering the facts of this case as a whole, Cousar was not denied a fair trial. Each of the assignments of error is without merit. The judgment of the Hinds County Circuit Court is affirmed.

¶26. **CONVICTION OF SALE OF COCAINE AND SENTENCE TO SERVE A TERM OF (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**